**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 3 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELOY GARLEY,

       Plaintiff-Appellant,

v.

SANDIA CORPORATION d/b/a
SANDIA LABORATORIES,

       Defendant-Appellee.

No. 99-2255

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-98-1127 JC/RLP)**

---

Michael D. Armstrong, Albuquerque, New Mexico for Appellant.

Robert P. Tinnin, Jr. (Ryan M. Randall with him on the brief), Hinkle, Cox, Eaton, Coffield & Hensley, LLP, Albuquerque, New Mexico for Appellee.

---

Before **TACHA, HOLLOWAY** and **BALDOCK**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

     Plaintiff/Appellant Eloy Garley brought this action against Sandia Corporation

(Sandia) in New Mexico State District Court on August 17, 1998 alleging six state law

causes of action arising out of his employment at Sandia. Garley alleged: (1) breach of

implied contract; (2) breach of the duty of good faith and fair dealing; (3) retaliation; (4) civil conspiracy; (5) defamation; and (6) intentional infliction of emotional distress. Sandia removed the complaint to the United States District Court for the District of New Mexico on September 14, 1998.

Sandia then moved to dismiss Garley's suit on the ground that it failed to state a claim on which relief may be granted. Garley moved to remand the case back to state court. The judge denied Garley's motion to remand and conditionally granted Sandia's motion to dismiss on the ground that Garley's state law claims were preempted by § 301 of the Labor Management Relations Act ("LMRA"). The court granted Garley thirty days in which to amend his complaint to state § 301 claims. When Garley failed to amend his complaint accordingly, the court, <u>sua sponte</u>, unconditionally granted Sandia's motion to dismiss. On appeal, Garley claims error in: (1) the district court's failure to grant his motion to remand the case to state court; and (2) it's decision to grant Sandia's motion to dismiss. We have jurisdiction pursuant to 28 U.S.C. § 1291.

**I**

**A**

**FACTUAL BACKGROUND**

Garley is a mechanic with Sandia and serves as a union steward for the Atomic Projects and Production Workers Metal Trades Council, AFL-CIO ("Union"). The Union

has a collective bargaining agreement ("CBA") with Sandia. In 1996, after an investigation into possible timecard fraud by Garley, Sandia terminated Garley's employment. Following procedures set forth in the CBA, the Union, acting on Garley's behalf, processed a grievance through arbitration.

On March 27, 1998, after arbitration hearings in October and December 1997, the arbitrator found that Sandia had failed to carry its burden of establishing just cause to support Garley's termination, and directed that Garley be reinstated with full back pay, benefits, and unbroken seniority. On April 7, 1998, Sandia complied with the order and reinstated Garley. On August 14, 1998, Garley filed a complaint in New Mexico state court stating state law claims arising from allegations that several members of Sandia's management conspired to levy against him false accusations of timecard fraud. Garley's version of the events leading to his termination, as alleged in his amended complaint, follows.

Garley alleged that as a union steward he was permitted under Articles 6 and 9 of the CBA to leave his post to attend to Union business. Complying with the procedural requirements of those articles, Garley averred that he would fill out a form 9614 documenting the times during which he attended to Union business, and that he would also customarily have his supervisor sign the form. Garley alleged that despite complying with these procedures, on April 19, 1996 he was confronted by his immediate supervisor, Mr. Rose, who demanded to know where he was going, and Garley says he responded he

was leaving to attend to Union business.

Garley alleged in his First Amended Complaint that Mr. Rose, who had a "personal axe to grind and a racist aversion toward plaintiff," initiated an investigation into timecard fraud, and that Mr. Rose related his "unsubstantiated allegations" to Mr. Fraser, the manager of Sandia's Employee and Labor Relations. Mr. Fraser and Mr. Harty (another Sandia management official) then advised Mr. Rose to contact Mr. O'Neill, Sandia's in-house investigator, to conduct surveillance of Garley to catch him committing timecard fraud, and that as a result Mr. O'Neill did conduct surveillance of Garley, including following his vehicle on three occasions. App. at 54. Garley alleges that after this surveillance, Mr. Rose ordered him to attend an "interview" where Mr. O'Neill confronted him with dates and times of the surveillance. Id. at 54-55. Garley alleged that during this "interview" he was neither asked to explain his activities nor informed of the allegations against him. Id. at 55.

Garley alleges that Mr. Rose reported the results of O'Neill's surveillance to two members of the Disciplinary Review Committee, id. at 56, and that Mr. Rose explained that the reason there was no written statement by Garley was because Garley had refused to provide one. Id. at 56. Garley asserts, however, that during the seven month investigation he was never asked to give an explanation of his activities, either verbally or in writing. Id. Garley alleges that the Disciplinary Review Committee on receiving the report that he committed timecard fraud (which amounted to three and one-half hours,

-4-

totaling $80.00), terminated his employment, effective December 16, 1996. Id.

The Union commenced grievance proceedings on Garley's behalf which were inconclusive, and the parties agreed to binding arbitration. Id. at 48. Hearings were held on October 13 and 14 and on December 1, 1997. The proceedings were terminated on January 30, 1998, and on March 27, 1998 the arbitrator found the charge of timecard fraud lacked sufficient proof. Id. at 49. The arbitrator ordered Sandia to reinstate Garley to his job with full back pay, benefits, and unbroken seniority. Sandia reinstated Garley on April 7, 1998. Id. at 49.

**B**

**PROCEDURAL BACKGROUND**

As noted, Garley filed suit in New Mexico state court in August 1998, alleging six state law claims: (1) breach of implied contract; (2) breach of the duty of good faith and fair dealing; (3) retaliation; (4) civil conspiracy; (5) defamation; and (6) intentional infliction of emotional distress. On September 14, 1998, Sandia filed a notice of removal in the United States District Court for the District of New Mexico on the ground that Garley's suit could have been commenced as an original action in federal court under 28 U.S.C. § 1331 because, according to Sandia, the state law claims were preempted by federal law under § 301 of the LMRA.[1] Consequently, the case was removable to federal

_____

[1]Section 301 of the LMRA states in pertinent part:
Suits for violation of contracts between an employer and a labor organization

court under 28 U.S.C. § 1441.

After the removal Sandia filed a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). Sandia argued: (1) Garley's state law claims were preempted by § 301 of the LMRA; and (2) Garley failed to state a cause of action under state law. Sandia argued that four of Garley's state law claims (civil conspiracy, defamation, breach of contract, and intentional infliction of emotional distress) were preempted by § 301 and should be dismissed because they were based on Sandia's investigation and termination of Garley. Consequently, they depend "wholly upon an interpretation of what investigatory and disciplinary actions Defendant was authorized to take under the CBA . . ." App. at 78. Sandia further argued that Garley's two remaining state law claims (retaliation and breach of the duty of good faith and fair dealing) were preempted by § 301 because they require review of the arbitrator's award and the terms of the collective bargaining agreement. See id. at 80.

The same day Sandia filed its motion to dismiss, Garley filed his First Amended Complaint. Garley states that at the time of filing his amended complaint on September 18, 1998, there had been no filing by Sandia except its notice of removal in connection

_____

representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

with Sandia's preemption argument.  From the amended complaint Garley excised all references to the CBA, thereby attempting to show that his complaint was not based on the collective bargaining agreement and was not preempted by § 301.

The First Amended Complaint restated Garley's six state law claims.  First, he alleged that the activities of four of Sandia's representatives (Rose, O'Neill, Fraser, and Harty) constituted a civil conspiracy to deprive him of his employment, income, benefits, and to impugn his reputation.[2]  App. at 53.  More specifically, Garley based his civil conspiracy claim on Rose's timecard fraud investigation; his conveyance of "unsubstantiated allegations" to Fraser and the subsequent surveillance; and the conduct of the "interview," where O'Neill confronted Garley with dates and times when he had conducted surveillance against him and where Garley alleged that he was neither asked to explain his activities nor informed of the allegations against him.  Id. at 55.  In addition, Garley alleged that when Fraser became manager of Sandia's Employee and Labor Relations, he altered the composition of the Disciplinary Review Committee (the entity which rules on disciplinary actions against employees who violate Sandia's Code of Ethics), so that a Union representative was no longer included on the Committee.  Garley

_____

[2]Under New Mexico law, the elements of a cause of action for civil conspiracy are: (1) the existence of a conspiracy; (2) a wrongful act or acts done pursuant to that conspiracy; and (3) damages resulting from that act or acts.  Reeves v. Wimberly, 107 N.M. 231, 235, 755 P.2d 75, 79 (N.M. Ct.App. 1988) (citing Las Luminarias of the New Mexico Council of the Blind v. Isengard, 92 N.M. 287, 587 P.2d 444 (N.M. Ct.App. 1978)).  The New Mexico Supreme Court has ruled, however, that "[c]ivil conspiracy is not of itself actionable; the gist of the action is the damage arising from the act(s) done pursuant to the conspiracy."  Reeves, 107 N.M. at 235, 755 P.2d at 79.

also alleged that Fraser changed the Committee's procedures so that notice of meetings was no longer given to employees or their union. Garley maintained that this "civil conspiracy" resulted in the Committee's wrongful determination that he had committed timecard fraud, leading to his termination on December 16, 1996, a determination later overturned by the grievance arbitrator but which nonetheless deprived him of his livelihood and tarnished his reputation.

Second, Garley alleged breach of implied contract. In support of this claim, Garley maintained that Sandia's published personnel policies and procedures found in its Code of Ethics, Personnel Policies, and Director's Memo, formed an express and implied contract which had been breached by Sandia in that it failed to follow the criteria stated for progressive disciplinary policy because, without clear and documented evidence supporting the allegations against him, Sandia authorized an investigation that was neither fair nor thorough.

Third, Garley alleged a claim of retaliation based on the fact that although the arbitrator ruled that Garley was entitled to immediate reinstatement and other relief, Sandia had stripped him of his Q-clearance without which any opportunities for promotion and career advancement were almost nil and that Sandia retaliated by refusing to reimburse his back pay, retirement funds, and by refusing to reinstate him to his previous work station.

Fourth, Garley alleged breach of the duty of good faith and fair dealing by

violating the public policy expressed by the New Mexico Unfair Practices Act. See N.M. Stat. Ann., § 57-12-3 (1978) ("Unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful."). On this claim Garley further averred that Sandia did not comply with all the terms of the award in that although reinstated, he was not given his former work station, his 401K benefits were not fully restored, he was not reinstated with full seniority, and he was stripped of his Q-clearance.

Fifth, Garley alleged a claim of defamation based on being summarily fired for a trumped up alleged offense which had no basis in documented facts. Garley emphasizes that he was an employee with a nineteen and one-half year record of unblemished service and no disciplinary action, and Sandia's actions branded him a thief.

Sixth, Garley alleged that Sandia committed the tort of intentional infliction of emotional distress because it knew or should have known that the actions of Rose, Fraser, O'Neill, and Harty were maliciously motivated and designed to punish and humiliate Garley and would cause him emotional harm.

## C

## THE DISTRICT COURT RULING

On September 30, 1998, Sandia moved to dismiss Garley's First Amended Complaint on the same grounds it asserted in its original motion – that the claims were

preempted by § 301. On November 3, 1998, Garley filed a motion to remand the case back to New Mexico state court. On February 4, 1999, the district judge issued an unpublished Memorandum Opinion and Order which denied Garley's motion to remand and conditionally granted Sandia's motion to dismiss. The judge noted that the civil conspiracy, defamation, breach of implied contract, and intentional infliction of emotional distress claims all revolve around the manner in which Sandia conducted its investigation of suspected employee misconduct and the way in which Garley was terminated. The judge cited the articles of the CBA governing management of the business, treatment of employees performing council duties, etc. and found that an analysis of whether Sandia acted properly would inevitably require an analysis of the CBA and what it permitted. This reasoning supported the position that there was § 301 preemption.

The judge likewise held that Garley's retaliation and breach of the duty of good faith and fair dealing claims were preempted by § 301 since one of the "key determinants" for resolving these claims would be whether reinstatement as defined by the CBA included reinstatement to the same work station and with the same security clearance. The judge also denied Garley's motion to remand, and ruled that Sandia's motion to dismiss would be granted unless Garley filed an amended complaint within thirty days that stated claims under § 301 of the LMRA.

Rather than amending his complaint Garley filed a notice of appeal to this court on March 2, 1999. On July 2, 1999, however, we dismissed that appeal for lack of

-10-

jurisdiction because the district judge's conditional dismissal was not a final decision from which Garley could appeal.  When Garley did not amend his complaint to state a § 301 claim, the judge <u>sua sponte</u> issued a final order on July 19, 1999 granting Sandia's motion to dismiss.  Garley now appeals this final judgment and argues that the district court erred both in granting Sandia's motion to dismiss and in denying his motion to remand the case to the New Mexico state court.

## III

### A

The district court granted Sandia's motion to dismiss for failure to state a claim upon which relief can be granted.  We review that decision <u>de novo</u>.  <u>Brever v. Rockwell Int'l Corp.</u>, 40 F.3d 1119, 1125 (10th Cir. 1994) ("[T]he sufficiency of a complaint is a question of law which we review <u>de</u> <u>novo</u>.") (quoting <u>Ayala v. Joy Mfg. Co.</u>, 877 F.2d 846, 847 (10th Cir. 1989)); <u>Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence</u>, 927 F.2d 1111, 1115 (10th Cir. 1991) ("We review <u>de</u> <u>novo</u> a district court's dismissal of a complaint pursuant to  Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief could be granted.").  Whether state law is preempted by federal law is a conclusion of law which we also review <u>de</u> <u>novo</u>.  <u>Panhandle E. Pipeline Co. v. Oklahoma ex rel. Comm'rs of Land Office</u>, 83 F.3d 1219, 1225 (10th Cir. 1996).  We review a denial of a  motion to remand a claim for lack of removal jurisdiction <u>de</u> <u>novo</u>.  <u>Audette v. International</u>

<u>Longshoremen's & Warehousemen's Union</u>, 195 F.3d 1107, 1111 (9th Cir. 1999).

**B**

Congress has granted the federal courts removal jurisdiction to hear claims initially brought in state court if the federal district court could have exercised original jurisdiction. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). As the Supreme Court noted in <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987), "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Here, we must determine whether Garley's original complaint, although stating <u>state law claims</u>, could have been founded in federal court under <u>federal question jurisdiction</u>. <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Generally, the "well-pleaded complaint" rule requires that the federal question appear on the face of the plaintiff's properly pleaded complaint. <u>Williams</u>, 482 U.S. at 392 ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a

-12-

federal question is presented on the face of the plaintiff's properly pleaded complaint."). In other words, the plaintiff is considered to be the "master of the claim" since "he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. Consequently, cases originally brought in state court may not be removed to federal court even if a federal defense is anticipated in the plaintiff's complaint, and "even if both parties concede that the federal defense is the only question truly at issue." Id. at 393.

The rule that the federal question must appear on the face of the plaintiff's complaint is subject to an important exception, however. Under the "complete preemption doctrine," federal courts may exercise federal question jurisdiction over complaints that, although not presenting federal questions on their face, nonetheless present state law claims that are preempted by federal law. As the Supreme Court noted in Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987), a "corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Thus, once "an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Williams, 482 U.S. at 393; see also Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 24 (1983) ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of

action necessarily 'arises under' federal law.").

Here, Garley appeals the district court's grant of Sandia's motion to dismiss on the ground that Garley's state law claims have been preempted by § 301 of the LMRA. To be sure, the "complete pre-emption doctrine to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA." Williams, 482 U.S. at 393. This arises from the fact that § 301 "expresses a federal policy that the substantive law to apply in § 301 cases 'is federal law, which the courts must fashion from the policy of our national labor laws.'" Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985) (quoting Textile Workers v. Lincoln Mills, 353 U.S. 448 (1957)). In other words, § 301 establishes a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Allis-Chalmers, 471 U.S. at 209. Consequently, in Teamsters v. Lucas Flour Co., 369 U.S. 103 (1962), the Court held that § 301 may preempt state law, ruling that "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." As the Court subsequently explained in Allis-Chalmers, 471 U.S. at 210, Lucas Flour.

> held that a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law. A state rule that purports to define the meaning or scope of a term in a contract suit therefore is preempted by federal labor law.

However, the Supreme Court has made clear that the preemptive effect of § 301 is

-14-

not limited to state suits alleging violations of labor contracts; rather, the "interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." Id. at 211. Consequently, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Id. (emphasis added).

Nevertheless, the Supreme Court has also made it clear that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." Id. Consequently, § 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Id. at 212 (emphasis added). The test articulated by the Supreme Court in Allis-Chalmers for determining whether a state law claim is not independent and thus is preempted by § 301 is "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Id. at 213 (emphasis added). In other words, "[i]f the state tort law purports to define the meaning of the contract relationship, that law is pre-empted." Id. (emphasis added);

In Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 401 (1988), the

-15-

Supreme Court elaborated on the <u>Allis-Chalmers</u> test for determining whether a state law claim is preempted by § 301.  <u>Lingle</u> presented the question of whether "an employee covered by a collective bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state-law remedy for retaliatory discharge." The Court held that in this case application of the state tort remedy was <u>not</u> preempted by § 301 of the LMRA.  <u>Id.</u>  Looking to the elements of the state tort action, the Court noted that "to show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights."  <u>Id.</u> at 407 (quoting <u>Horton v. Miller Chemical Co.</u>, 776 F.2d 1351, 1356 (7th Cir. 1985)).  The Court thus concluded that proving this tort did <u>not</u> require examining the substance of the collective bargaining agreement because

> [e]ach of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer.  Neither of the elements requires a court to interpret any term of a collective-bargaining agreement.  To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement.  Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

<u>Id.</u> at 407 (internal citations and footnote omitted).

The Court went on to rule that even though the factual inquiry involved in resolving the state law claim and construing the CBA could overlap, that does not mandate preemption of the state tort action:

> We agree with the [lower] court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determinations of whether [the plaintiff] was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. . . . [Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, <u>even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.</u>

<u>Id.</u> at 409-410 (footnotes omitted) (emphasis added).

With this in mind, we turn now to examine each of Garley's state law claims to determine whether their resolution requires a court to interpret the collective bargaining agreement.

**C**

Sandia first argues that four of Garley's claims, those for civil conspiracy, defamation, breach of contract, and intentional infliction of emotional distress, are preempted by § 301 because they are based on the investigation and termination of Garley

and therefore require interpretation of the CBA. Sandia relies principally on two cases from our precedent to support this proposition – Mock v. T.G. & Y. Stores, Co., 971 F.2d 522 (10th Cir. 1992), and Johnson v. Beatrice Foods Co., 921 F.2d 1015 (10th Cir. 1990).

In Johnson, 921 F.2d at 1015, we considered whether an employee's state law claim for intentional infliction of emotion distress against his former employer was preempted by § 301. Holding that it was preempted, we noted that the plaintiff's claim "directly relates to either explicit or implied rights derived from the CBA," and that his complaint "pertains to the manner in which discipline was carried out." Moreover, we found that the plaintiff "could have used the CBA grievance procedure for any of the allegations in his complaint since all the allegations involved either a suspension, discharge, or work-related dispute." Id. at 1020. Finally, we took note of the fact that under applicable state law standards for intentional infliction of emotional distress, it could not be determined whether the defendant's conduct was sufficiently outrageous without determining whether the conduct was allowed under the CBA. Id. at 1020-21. Distinguishing the Supreme Court's opinion in Lingle which held that a state tort claim for retaliatory discharge was not preempted, we emphasized the fact that the state law at issue in Lingle:

> create[d] an independent state cause of action because it create[d] an
> independent method of review. The facts alleged by the employee in Lingle
> fit specifically into the Act's prohibition of firing an employee for
> exercising rights under the Act. Such a statute is not pre-empted by § 301
> even though the CBA grievance procedure would review the same facts
> under a more general claim of unjust discharge. In contrast, Oklahoma's

-18-

tort for intentional infliction of emotional distress does not create an independent method of measuring when an employer's work-related conduct is outrageous.

Id. at 1021.

In Mock, we followed Johnson in considering whether § 301 preempted state law claims brought in federal court by unionized employees against their employer arising from the employer's investigation of suspected employee theft and substance abuse. We held that the plaintiffs' state law claims, which included, inter alia, intentional infliction of emotional distress, defamation, and breach of an implied covenant of good faith and fair dealing, were preempted by § 301, because

> [p]laintiffs' claims all arose out of the manner in which [the defendant] conducted its investigation of suspected employee misconduct, and the way in which it terminated certain employees. Under the CBA, [the defendant] could conduct such an investigation of suspected employee misconduct, and could terminate any employee for "just cause." An analysis of whether [the defendant] acted properly or not will inevitably require an analysis of what the CBA permitted.

Id. at 530.

Sandia argues that here, as in Johnson and Mock, resolving Garley's claims for civil conspiracy, defamation, breach of contract, and intentional infliction of emotional distress all depend upon interpreting what investigatory and disciplinary actions Sandia was authorized or required to take under the CBA and therefore are preempted by § 301. Appellee's Brief at 12. We agree, but only insofar as this analysis applies to Garley's claims of breach of implied contract and defamation. As explained below, we disagree

-19-

with regard to the conspiracy claim and conclude that that claim is not preempted. Concerning the intentional infliction of emotional distress claim, we conclude that Garley's claim is partially preempted.

We turn first to the breach of implied contract claim. We conclude it is preempted by § 301. To the extent that the claim is based on an alleged breach of the CBA, the claim is clearly preempted. Mock, 971 F.2d at 529; Johnson, 921 F.2d at 1018-19. Garley, however, contends that his claim is not founded on the CBA but rather is based exclusively on implied contracts created by Sandia's Personnel Policy, Code of Ethics, and Director's Memo. Consequently, Garley argues that the CBA is irrelevant to his claim and that his First Amended Complaint deleted all references to it. Thus, Garley contends that a court has no need to interpret the CBA.

We disagree. To be sure, the Supreme Court has ruled that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement." Williams, 482 U.S. at 396. However, we do not believe this to be the case here. Despite Garley's emphatic protestations to the contrary, we are persuaded that the documents he cites were intended to be read in harmony with the CBA.[3] Sandia's Personnel Policy, under the heading "Disciplinary Action,"

---

[3]Although we have been provided only selected excerpts of these documents we nonetheless believe that the materials in our possession are adequate for us to arrive at this determination.

-20-

specifically refers the reader to a separate section (not included in this record) for rules governing the discipline of represented employees. See Appendix at 168 ("See Section 6.7 for cases involving represented employees."). Likewise, the Director's Memo also indirectly references the CBA by stating that when formal actions become necessary because of poor performance, "managers should invite the employee to obtain union representation if the employee is represented." Id. at 173 (emphasis added). These provisions lead us to conclude that the documents upon which Garley relies are "inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 213. Consequently, they are preempted by § 301. See Cisneros v. ABC Rail Corp., 217 F.3d 1299, 1303 (10th Cir. 2000); Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1014-1016 (9th Cir. 2000); Audette v. International Longshoremen's & Warehousemen's Union, 195 F.3d 1107, 1112 (9th Cir. 1999); Beidleman v. The Stroh Brewery Co., 182 F.3d 225, 229-31 (3d Cir. 1999); Henderson v. Merck & Co., Inc., 998 F. Supp. 532 (E.D.Pa. 1998).

Regarding Garley's defamation claim, we also conclude that it is preempted by § 301. As we ruled in Mock, when confronted with a § 301 preemption challenge to a state defamation action, "federal courts look beyond the allegations of the complaint . . . to determine whether the wrong complained of actually arises in some manner from the breach of the defendants' obligations under a collective bargaining agreement." Mock, 971 F.2d at 530 (quoting United Assoc. of Journeymen & Apprentices of the Plumbing &

Pipefitting Industry v. Bechtel Power Corp., 834 F.2d 887-88 (10th Cir. 1987), cert. denied, 486 U.S. 1055 (1988)). Here, Garley bases his defamation claim on the theory that his termination for timecard fraud publically branded him as dishonest. We believe that this is preempted by § 301. In Mock, after noting that the plaintiff's defamation claim arose out of "the manner" in which the defendant "conducted its investigation of suspected employee misconduct, and the way in which it terminated certain employees," we held that determining whether the defendant "acted properly or not will inevitably require an analysis of what the CBA permitted." Id. at 530. Likewise, here, in order to determine whether Garley was defamed by Sandia's actions, the court would inevitably have to examine Sandia's rights and obligations under the CBA to decide whether Sandia's actions were authorized; § 301, however, preempts state causes of action from permitting this sort of inquiry. Consequently, we hold the defamation claim to be preempted.

Turning next to the civil conspiracy claim, we hold that the district court erred in finding it preempted by § 301. Sandia's contention that Johnson and Mock control our decision regarding this claim fails to take account of our subsequent opinion in Albertson's, Inc. v. Carrigan, 982 F.2d 1478 (10th Cir. 1993), which in distinguishing and limiting both cases held that a claim for civil conspiracy was not preempted. In Albertson's, a union employee covered by a collective bargaining agreement filed a claim in Colorado state court alleging that her employer "unlawfully suspended [her] from

-22-

employment and conspired to accuse her falsely of shoplifting from her employer." Id. at 1479.[4]  The defendants then sought to remove the action to federal court on the ground that § 301 of the LMRA preempted her state law claims, and moved to dismiss, which the court treated as a motion for summary judgment. Id.  Although the district court dismissed the suspension claim on preemption grounds, it nonetheless ruled that "the conspiracy claim was not preempted because it did not require interpretation of the collective bargaining agreement." Id. (emphasis added).  Thus, the district court remanded the conspiracy claim back to state court. Id.  The defendants then sought review of the remand by a petition for a writ of mandamus, arguing that the plaintiff's claim was completely preempted and thus should have been dismissed without remand to the state court.

In determining whether the alleged conspiracy arose from a breach of obligations under the collective bargaining agreement, we distinguished our holding in Johnson by noting that there "the acts that formed the basis of the outrageous conduct claim were alleged acts of harassment on the job by Johnson's supervisor, many of which were in the form of grievances filed against Johnson invoking procedures set out in the CBA." Id. at 1482.  We also explained that in Johnson "it could not be determined whether the conduct

_____

[4]The original complaint stated a single cause of action for "extreme and outrageous conduct," inflicting upon the plaintiff "severe emotional distress."  The district court, however, construed this as actually consisting of two distinct claims: "one based on suspension and one based on conspiracy to charge [plaintiff] with shoplifting." Albertson's, 982 F.2d at 1479.

was outrageous without determining whether the conduct was allowed under the CBA."

Id. (internal quotations omitted). Our Albertson's opinion then distinguished Mock by noting that since in that case "'all of the state law claims 'arose out of conduct alleged to have occurred during the course of an investigation by [the employer], and would 'inevitably require an analysis of what the CBA permitted,'" preemption was required. That, however, was not the case in Albertson's. Thus, Albertson's held that:

> In the case before us, there is no doubt that many, if not all, of the same factual issues and disputes will have to be resolved in arbitrating the discharge under the CBA as in determining the conspiracy or outrageous conduct claim. But, it is also true that <u>if plaintiffs can show defendants conspired to have Mrs. Aguirre arrested by fabricating her theft of groceries from her employer, proving their outrageous conduct need not require interpretation of or reference to the CBA.</u>

Id. at 1482.

> We based this conclusion on the fact that if we
>
> were to hold § 301 preempts plaintiff's state law claim that defendants conspired to set her up for arrest and imprisonment just because the same factual disputes would be present in arbitration under the CBA, it would seem to be virtually impossible for a plaintiff to set out a state claim when the complaint also states a federal § 301 claim or a grievance procedure is commenced under the CBA. We cannot reconcile such a conclusion with <u>Lingle</u>.

Id. at 1482-83.

In the instant case, as in Albertson's, the plaintiff's civil conspiracy claim is predicated on an allegation that management sought to frame the plaintiff for misconduct. Likewise here, as in Albertson's, though addressing the conspiracy claim would involve

-24-

many of the same factual inquiries as assessing the plaintiff's discharge under the CBA, because the focus of the claim is on the defendant's alleged conspiring against the plaintiff (an inquiry analytically distinct from whether its actions were permitted by the CBA), we conclude that it is not preempted by § 301. Lingle, 486 U.S. at 409-410 (holding that even if construing the CBA and the state law "require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes").

Regarding Garley's claims for breach of the duty of good faith and fair dealing, and for retaliation, Sandia argues that they are preempted by § 301 because resolving those claims would require review of the arbitrator's award and thus the terms of the CBA. We turn first to the claim of breach of the duty of good faith and fair dealing. That claim is easily disposed of for Garley bases this claim on allegations that Sandia did not fully implement the arbitrator's order that he be reinstated with full back pay, seniority, and benefits. Consequently, this issue can only be resolved by construing the arbitrator's ruling. Since that ruling was made pursuant to the CBA, it is preempted by § 301 as "inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 213.

Turning to the retaliation claim, in examining whether that claim is preempted, we must draw an important distinction between Sandia's contractual rights to take the actions

it did and the underlinemotivations behind them. As we explained in <u>Jarvis v. Nobel/Sysco Food Services Co.</u>, 985 F.2d 1419, 1427 (10th Cir. 1993), in holding that a retaliatory discharge claim was not preempted, "[s]o long as the state law cause of action is concerned not with the employer's contractual rights to discharge the employee, but rather with its motives in exercising that right, the CBA is not relevant and preemption does not apply." The Supreme Court itself recognized in <u>Lingle</u> that litigating a state law retaliatory discharge claim presents purely factual questions pertaining to the "conduct of the employee and the conduct and motivation of the employer," and that neither required "a court to interpret any term of a collective-bargaining agreement." <u>Lingle</u>, 486 U.S. at 407.

Consequently, "[e]ven if the employee violated the employer's rules, giving the employer 'just cause' to discharge him, the question is whether the employer's motivation for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law." <u>Davies v. American Airlines, Inc.</u>, 971 F.2d 463, 466 (10th Cir. 1992) (citing <u>Marshall v. TRW, Inc., Reda Pump Division,</u> 900 F.2d 1517 (10th Cir. 1990)) (applying LMRA preemption analysis to hold that the Railway Labor Act does not preempt state law tort for retaliatory discharge); <u>Cramer v. Consolidated Freightways, Inc.</u>, 209 F.3d 1122, 1135 (9th Cir. 2000) (holding that retaliatory discharge claim is not preempted where it rests on the defendant's motivations for firing the plaintiff); <u>Owen v. Carpenters' District Council</u>, 161 F.3d 767, 776 (4th Cir. 1998) (holding a state law claim for retaliatory discharge not preempted where the claim "primarily concerns the conduct

of the employee and the conduct and motivation of the employer"); <u>Martin Marietta Corp.</u>

<u>v. Maryland Comm'n on Human Relations</u>, 38 F.3d 1392, 1402 (4th Cir. 1994).

Although these cases involved retaliatory discharge, and here Garley alleges the

retaliation came in the form of withholding back pay, reassignment to a different

workstation, and loss of a security clearance, the principle remains the same and

preemption is not mandated.  See <u>White v. General Electric Co.</u>, 1997 W.L. 437092 (6th

Cir. Aug. 4, 1997) (holding that retaliation claim for refusing to correct personnel records

and withholding back pay is not preempted by § 301).[5]

We turn now to the intentional infliction of emotional distress claim.  Garley

---

[5]We are not persuaded by Sandia's reliance on the unpublished district court decision in <u>White v. General Electric Co.</u>, 157 L.R.R.M. (BNA) 2113, 2115 (W.D.Ky. 1995), where, according to Sandia, the district court ruled that the plaintiff's claim that the defendant did not fully comply with an arbitrator's award was preempted by § 301.  <u>See</u> Appellee's Brief at 18. Our research reveals that the Sixth Circuit, in an unpublished opinion affirming the district court decision cited by Sandia, demonstrates that the plaintiff's <u>retaliation</u> claim was <u>not</u> preempted:
> [T]he district court correctly held that  § 301 of the LMRA does not preempt
> White's retaliation claim.  A state law claim is preempted only if the action
> requires interpretation of a collective bargaining agreement.  Here, the emphasis
> of White's claim of retaliation is that GE refused to correct her personnel record
> to reflect her appropriate seniority for at lease fifteen years.  She further claimed
> that once her seniority date was restored and her backpay calculated, GE
> continued to retaliate against her by waiting five months to pay her back wages
> and then refusing to explain how it calculated that amount.  <u>The inquiry into GE's</u>
> <u>motivation does not require an interpretation of the terms under the collective</u>
> <u>bargaining agreement.  Because White's retaliation claim does not require "an</u>
> <u>interpretation of collective bargaining agreement terms," and her claim is</u>
> <u>"created" by state law, her claim of retaliation . . .  is not preempted by § 301 of</u>
> <u>the LMRA</u>.

<u>White v. General Electric Co.</u>, 1997 W.L. 437092, at *2 (6th Cir. Aug. 4, 1997) (internal citations omitted) (emphasis added).

presents two factual predicates for this claim: (1) Sandia's actions leading to his dismissal; and (2) Sandia's "continued retaliatory acts." App. at 64. To the extent that Garley bases his claim on Sandia's conduct during the investigation, we affirm the district court's ruling that this claim is preempted. Determining whether Sandia's conduct during its investigation of Garley was "outrageous," an element of the tort, requires construction of Sandia's rights and obligations under the CBA as that is the reference point against which Sandia's action must be scrutinized.

This line of inquiry, however, is preempted by § 301. Carter v. Ford Motor Co., 121 F.3d 1146, 1149 (8th Cir. 1997) (holding that state tort action for intentional infliction of emotional distress is preempted where a determination on the merits "would require the court to determine whether [plaintiff's] discharge was warranted under the terms of the collective bargaining agreement"); Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 27 (1st Cir. 1997) ("[The defendant's] rights and obligations under the collective bargaining agreement are obviously central not only to an inquiry into [its] intentions, but also to an inquiry into whether [it] conducted itself in a sufficiently outrageous manner to give rise to liability under state tort law."); Douglas v. American Information Technologies Corp., 877 F.2d 565, 573 (7th Cir. 1989) ("Because [plaintiff's] intentional infliction of emotional distress claim consists of allegedly wrongful acts directly related to the terms and conditions of her employment, resolution of her claim will be substantially dependent on an analysis of the terms of the collective

-28-

bargaining agreement under which she is employed."); Scott v. Machinists Automotive Trades Dist. Lodge No. 190 of Northern California, 827 F.2d 589, 594 (9th Cir. 1987) ("[S]tate tort claims for intentional infliction of emotional distress are preempted where they arise out of the employee's discharge or the conduct of the defendants in the investigatory proceedings leading up to the discharge."). Accordingly, we hold that § 301 forecloses Garley from successfully asserting an intentional infliction of emotional distress claim based on Sandia's disciplinary procedures.

The fact that Garley's claim for intentional infliction of emotional distress, to the extent that it is based on Sandia's actions leading to his dismissal, is preempted by § 301, does not require us to arrive at the same conclusion with respect to Garley's second factual predicate for his claim -- Sandia's alleged retaliatory actions taken following the arbitrator's ruling. We are not required to find preemption in "every conceivable claim for intentional infliction of emotional distress which arises from conduct in the work place." Jackson v. Kimel, 992 F.2d 1318, 1326 (4th Cir. 1993). For the reasons we set out above when discussing Garley's claim for retaliation, we find that to the extent Garley's claim of intentional infliction of emotional distress is based on Sandia's retaliatory acts, we conclude that the claim is not preempted and reverse. As with Garley's independent cause of action for retaliation, determining whether Sandia's allegedly retaliatory acts are "outrageous" would not require resort to the CBA. Consequently, to the extent that Garley's cause of action for intentional infliction of

emotional distress is based on Sandia's conduct <u>after</u> the completion of the binding arbitration, his claim is not preempted by § 301.

**IV**

We hold that Garley's claims of breach of implied contract, breach of the duty of good faith and fair dealing, and of defamation are preempted by § 301 of the LMRA. Garley's claims for alleged civil conspiracy and retaliation are not so preempted. Garley's claim of intentional infliction of emotional distress is preempted only to the extent that the claim is based upon Sandia's actions leading to the termination of his employment, but the emotional distress claim is not preempted to the extent that it is based upon alleged retaliatory actions.

Accordingly, we AFFIRM the dismissal of the claims of breach of implied contract, of breach of the duty of good faith and fair dealing, and of defamation. We leave it to the discretion of the district court to decide whether to permit amendment of these preempted state law claims to allege claims under § 301. We REVERSE the dismissal of the claims of alleged civil conspiracy and retaliation, and the claim of alleged intentional infliction of emotional distress insofar as it is based on Sandia's alleged retaliatory actions. As to the claims the dismissal of which we hold to be in error, those claims are remanded to the district court for further proceedings pursuant to 28 U.S.C. § 1367.

IT IS SO ORDERED.