HARTZ, Circuit Judge,
dissenting:
I respectfully dissent. The critical issue in this case is what sources of information we may use to determine whether any of Mr. Karnes’ claims is preempted by § 301 of the Labor Management Relations Act (LMRA). As the majority opinion recognizes, a state-law claim is preempted by § 301 when resolution of the claim requires interpreting a contract between an employer and a labor union representing its employees. If the determination of whether a claim is preempted had to be based solely on the face of the plaintiffs complaint, then preemption could be avoided by artful pleading. Accordingly, we may look behind the complaint’s allegations. See Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 530 (10th Cir.1992). The majority opinion pays lip service to that proposition but then proceeds to ignore it.
Consider the majority opinion’s discussion of § 562 of the Oklahoma Standards for Workplace Drug and Alcohol Testing Act (the Standards Act), Okla. Stat. tit. 40, § 562. That section requires a positive drug test result to be confirmed by a second test. I agree that the section supersedes any contrary provision of a collective bargaining agreement (CBA), and therefore a claim based on a violation of § 562 would not be preempted. But the majority opinion’s invocation of § 562 is an act of creative imagination, not founded on the record. The only mention of § 562 in any pleading is the complaint’s reference to “40 O.S. 551, et seq.” Aplt.App. at 6 (emphasis added). Not even on appeal does Mr. Karnes express any reliance on § 562.
If “one examines the record, the nature of Mr. Karnes’s claim becomes clear enough, and § 301 preemption is then indisputable. I will begin with the complaint. Then I will review the subsequent pleadings in district court to resolve the complaint’s ambiguities.
The introductory paragraph of Mr. Karnes’s Petition for Damages expresses alternative grounds for his cause of action. It states that he seeks damages from Boeing “for willful violation of 40 O.S. 551, et seq., the Standards for Workplace Drug and Alcohol Testing Act (‘Standards Act’); alternatively, for wrongful termination contrary to Oklahoma’s public policy pursuant to. the Standards Act; for wrongful termination contrary to Oklahoma’s public policy pursuant to 40 O.S. 1-101, et seq., the Employment Security Act of 1980 (‘ESA’); alternatively, for prima facie tor-tious conduct_” Aplt.App.. at 6.
After 12 paragraphs of factual allegations, the petition continues under three legal-theory headings (not numbered as separate counts) followed by a conclusion. The first heading is “VIOLATION OF THE STANDARDS FOR WORKPLACE DRUG AND ALCOHOL TESTING ACT, 40 O.S. 551, ET SEQ.” Id. at 7. Under that heading the petition asserts that “[t]he Standards Act was willfully violated by *1196 Defendant’s actions as those actions are above outlined.” Id.
The second heading is “WRONGFUL TERMINATION PURSUANT TO TITLE 40 OF THE OKLAHOMA STATUTES.” Id. at 8. Under that heading he asserts that if the Standards Act theory fails, “Defendant’s actions in terminating Plaintiff also constitute a breach of the public policy of the state of Oklahoma as the public policy is enunciated in the Standards Act.” Id. Also under that heading he alleges that the Employment Security Act “clearly articulates a public policy that calls for prevention of unemployment, a premise from which it necessarily follows that an employee should be fired only for cause in a non-discriminatory fashion” and that “Plaintiff was discharged from Defendant in a discriminatory manner” and “in breach of its various public [sic] and agreements with him.” Id.
Finally, under the third heading — “PRI-MA FACIE TORT” — the petition asserts that “Defendant’s actions were unjustified and carried out with the intention of causing harm and injury to Plaintiff, constituting prima facie tortious conduct.” Id. at 9.
I have no idea how one could assess whether Mr. Karnes’s cause of action is preempted by § 301 based solely on the paragraphs under the three headings, without knowing more about the underlying factual basis. Some of that basis appears in the introductory 12 paragraphs of the complaint. These 12 paragraphs are then re-incorporated under each legal-theory heading. After describing Mr. Karnes’s employment relationship with Boeing, the paragraphs state:
5. Plaintiff was filmed together with five (5) other employees in March of 2000 smoking marijuana.
6. , Plaintiff was terminated on or about April 4, 2000.
7. Defendant entered into an agreement with Plaintiff that if all of the employees filmed smoking marijuana were to come forward, none would suffer the loss of employment.
8. Three employees came forward; the remaining two were prepared to come forward.
9. Defendant unilaterally reneged on this agreement.
10. Plaintiff reached a second agreement with Defendant that if he would take a drug test and come up clean, he would be reinstated.
11. Defendant unilaterally reneged on this agreement.
12. None of the other employees filmed by Defendant had any adverse employment action taken against them by Defendant.
Id. at 6-7. No other facts are alleged later in the complaint.
If, as would be the natural inference, these allegations constitute the predicate for each of the legal theories for relief, then it follows that the factual basis for Mr. Karnes’s claim is that he was terminated in violation of agreements with Boeing, while none of his fellow miscreants suffered any adverse employment action. Indeed, Mr. Karnes made it perfectly clear that this was the gist of his claim when he described his claim in his Response to Defendant’s Supplemental Brief in Support of its Motion for Summary Judgment, filed in federal district court. Challenging the district court’s ruling in a December 6, 2001, order that Mr. Karnes’s allegations could not be adjudicated without reference to the CBA, he wrote:
Plaintiffs claim is based upon the nondiscriminatory clause of Oklahoma’s Standards for Workplace Drug and Alcohol Testing Act wherein the Act states with respect to an employer’s written drug testing program that it “shall be uniformly applied to those covered by the policy.” 40 O.S. 555(A). Plaintiffs *1197 allegations are that “Defendant entered into an agreement with Plaintiff that if all of the employees filmed smoking marijuana were to come forward, none would suffer the loss of employment.” There were four others who came forward, but “[n]one of the other employees filmed by Defendant had any adverse employment action taken against them by Defendant.”
Id. at 96. Our preemption analysis must address the claim as so described — not some hypothetical claim that might fit within the vague generalities of paragraphs 13-31 of the complaint.
Turning to Plaintiffs actual claims, I recognize that Mr. Karnes is not suing for breach of contract. But that is not the test. As we stated in Garley v. Sandia Corp., 236 F.3d 1200, 1208 (10th Cir.2001), “the preemptive effect of § 301 is not limited to state suits alleging violations of labor contracts.” The test is whether interpretation of a § 301 contract is necessary to resolve the claim. For example, in Garley the plaintiff claimed that he was defamed because his termination for time-card fraud publicly branded him as dishonest. Id. at 1211. We concluded that this claim was preempted, because “to determine whether [the plaintiff] was defamed by [the defendant’s] actions, the court would inevitably have to examine [the defendant’s] rights and obligations under the CBA to decide whether [the defendant’s] actions were authorized.” Id. Similarly, we concluded that one of the plaintiffs claims for intentional infliction of emotional distress was preempted because “[d]etermining whether [the defendant’s] conduct during its investigation of [the plaintiff] was ‘outrageous,’ an element of the tort, requires construction of [the defendant’s] rights and obligations under the CBA as that is the reference point against which [the defendant’s] action must be scrutinized.” Id. at 1214.
In my view, it is clear, for two reasons, that Mr. Karnes’s claim requires the interpretation of a labor contract. First, Mr. Karnes states that his claim is that Boeing’s drug testing program was not “uniformly applied to those covered by the policy,” as required by the Standards Act. Okla. Stat. tit. 40, § 565A. Such a claim cannot be resolved, however, without knowing what that policy said. (There is no dispute that the policy was part of the CBA.) Mr. Karnes would have to point to a provision of the policy and explain how his treatment under that provision differed from the treatment of another covered employee. His claim is preempted because it is “substantially dependent on analysis of [the CBA].” Caterpillar, Inc. v. Williams, 482 U.S. 386, 394, 107 S.Ct. 2426, 96 L.Ed.2d 318 (1987) (internal quotation marks omitted). '
Second, it is clear from the complaint and the district court pleadings that Mr. Karnes’s specific claim derives from alleged breaches of two agreements made after he was filmed smoking marijuana. If the agreements were between Boeing and Mr. Karnes’s union, they would come under § 301, even though neither agreement is the CBA covering all employees in the bargaining unit. See Retail Clerks Int’l Ass’n v. Lion Dry Goods, Inc., 369 U.S. 17, 25-28, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962); Jones v. Gen. Motors Corp., 939 F.2d 380, 382-83 (6th Cir.1991) (individual employee’s grievance-settlement agreement falls under § 301); 29 U.S.C. § 185(a). I recognize that the complaint alleges that these agreements were between Boeing and Mr. Karnes, so that if the determination of § 301 preemption had to be based on the complaint alone, we would be bound by the complaint’s allegation that they were the parties to the contract. As previously noted, however, we can look behind the complaint. Here, we have a compelling motive to do so. The allegation in the *1198 complaint fails the smell test because it would be highly unlikely that Boeing would reach a separate agreement with an employee in the bargaining unit. Such an agreement would almost certainly violate the terms of the CBA and our nation’s labor laws. See Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 683-84, 64 S.Ct. 830, 88 L.Ed. 1007 (1944); Caterpillar v. Williams, 482 U.S. at 397-99, 107 S.Ct. 2425; 29 U.S.C. § 159(a). Thus, the logical presumption is that the agreements referenced in the complaint were actually between Boeing and the Union.
Reliance on such a presumption is unnecessary here, however, because the record establishes that the union, not Mr. Karnes, was the party that contracted with Boeing. In federal district court Boeing argued in response to Mr. Karnes’s objection to removal that the agreement on which Mr. Karnes was basing his claim was negotiated between it and the union. See ApltApp. at 18-19, 21-22. To support its contention, Boeing appended a National Labor Relations Board grievance that Mr. Karnes had filed against his union, in which he indicated that the union and Boeing were the ones who reached the agreement regarding those caught smoking marijuana. See id. at' 40 (Mr. Karnes’s NLRB grievance, stating that “on or about April 6, 2000 [the union] reached agreement with [Boeing] to offer drug counseling assistance and 3 yr probation to all involved parties, if other parties would identify themselves and turn themselves in,” and “on or about April 12, 2000 [Boeing] rescinded agreement with [the union]”). In response to Boeing’s motion, Mr. Karnes conceded that the agreement was between his union and Boeing. Id. at 66. Indeed, the section of his pleading in which he addresses Boeing’s preemption argument is entitled “The Agreement Between Boeing and [the union].” Id. Moreover, none of Mr. Karnes’s subsequent district court pleadings challenge Boeing’s contention that the agreement falls under § 301 (though he maintains that the claim is not preempted). See id. at 96-97, 115— 16.
Because the agreements reached after Mr. Karnes was caught smoking marijuana are contracts under § 301, his claim is preempted if resolution of the claim requires interpreting them. In my view, such interpretation is clearly required. Mr. Karnes alleges (1) that Boeing negotiated an agreement promising leniency if all the employees filmed smoking marijuana accepted responsibility, and (2) that the separate agreement was not uniformly applied, as required by § 555A of the Standards Act, because he was fired while the other four employees who came forward suffered no adverse employment action. A determination of whether Mr. Karnes suffered from a non-uniform application of the agreement will inevitably require consideration of what the agreement said. For example, if Boeing’s treatment of the implicated employees was required by the terms of the agreement, Mr. Karnes would have no claim of non-uniform application.
Mr. Karnes’s claim is no more than a breach-of-contract claim disguised as an Oklahoma statutory cause of action. The claim is preempted, and the district court properly exercised removal jurisdiction.