**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 13 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

WALLACE O. CUMPSTON,

　　　　Plaintiff-Appellant,

v.

DYNCORP TECHNICAL SERVICES,
INC.; JOHN R. COLE; RICHARD
PATTON; LILBURN PIERCE; CURT
CLEARY, all individually,

　　　　Defendants-Appellees.

No. 02-6268
(D.C. No. CIV-01-1884-HE)
(W.D. Okla.)

---

ORDER AND JUDGMENT   *

---

Before **EBEL**, **PORFILIO**, and **McCONNELL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Wallace O. Cumpston appeals from an order of the district court dismissing the tort claims he asserted against his former employer and supervisors as preempted under § 301 of the Labor Management Relations Act (LMRA). On de novo review, *see Steinbach v. Dillon Cos.*, 253 F.3d 538, 539 (10 th Cir. 2001), we affirm.

Plaintiff alleged the individual defendants assigned him especially onerous tasks exposing him to unhealthy high temperatures, made invasive inquiries at his doctor's office when he returned from a medical absence with a note specifying a temperature-related work restriction, and imposed factually unwarranted and procedurally improper discipline progressing from reprimand to suspension and, finally, to termination of his employment with defendant Dyncorp Technical Services, Inc. He alleged this harassment was prompted initially by defendants' knowledge of his prior union activities (in connection with a different employer) and later by defendants' desire to retaliate for grievances he filed against them. He asserted three legal claims: (1) Dyncorp breached the collective bargaining agreement (CBA) governing their employment relationship; (2) the individual defendants tortiously interfered with his employment contract with Dyncorp; and (3) Dyncorp breached an implied contractual duty, separate from the CBA, arising from a Dyncorp business-ethics policy proscribing workplace harassment.

Defendants moved for judgment on the pleadings, arguing that plaintiff's claims were preempted by both the LMRA and the National Labor Relations Act (NLRA). The district court agreed that the claims were preempted by the LMRA and, noting that arbitration proceedings between plaintiff and Dyncorp pursuant to the CBA had not been completed, dismissed the action. [1] We review the district court's determination de novo, *see Steinbach*, 253 F.3d at 539 (preemption rulings reviewed de novo); *see also Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1265 (10 th Cir. 2003) (judgment on the pleadings reviewed de novo), and affirm for the reasons expressed below.

The LMRA expressly governs claims "for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). Thus, as plaintiff "tacitly admit[ted]" to the district court, App. at 266, and does not dispute on appeal, his claim for breach of the CBA is obviously preempted. *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1210 (10 th Cir. 2001) ("To the extent that [a] claim is based on an alleged breach of the CBA, the claim is clearly preempted."). As for the remaining claims, the controlling question is whether they "could be resolved without reference to the [CBA]." *Steinbach*, 253 F.3d at 540.

---

[1] In light of its ruling on LMRA preemption, the district court did not reach the question of preemption under the NLRA.

Plaintiff's claim against his supervisors for tortious interference rests on his factual allegations of unfair task assignment, unduly strict and personally invasive enforcement of rules regarding medical leave and on-the-job injury, and substantively erroneous and/or procedurally improper imposition of discipline. Consideration of the CBA is plainly necessary to an informed assessment of such work-related complaints, and this must be done in connection with the LMRA. *See Steinbach*, 253 F.3d at 540-41 (affirming LMRA preemption of tortious interference claim in employment context); *see also Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1020 (10 th Cir. 1990) (following same analysis to hold outrageous conduct claim based on allegations of workplace harassment preempted by LMRA). In state tort law terms, without reviewing the CBA it would not be possible to determine whether plaintiff was treated wrongfully or whether defendants' actions fell within the bounds of a pertinent contractual privilege, justification, or excuse–all matters essential to the resolution of a claim for tortious interference in Oklahoma. *See Brown v. State Farm Fire & Cas. Co.*, 58 P.3d 217, 223 (Okla. Civ. App. 2002) (following *Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979)).

Plaintiff cites case law holding that claims for tortious interference with contract may be brought, as here, between employees of a common employer only if the defendant acted in bad faith contrary to the employer's interests, *see Martin*

-4-

*v. Johnson*, 975 P.2d 889, 896-97 (Okla. 1998), and argues this focus on motive brings such claims out of the preemptive shadow of the CBA, which deals, rather, with conduct.  There is a line of cases recognizing that "'[s]o long as the state law cause of action is concerned not with the employer's contractual rights to [take adverse action against] the employee, but rather with its motives in exercising that right, the CBA is not relevant and preemption does not apply.'"  *Garley*, 236 F.3d at 1213 (explaining why retaliation claim was not preempted) (quoting *Jarvis v. Nobel/Sisco Food Servs. Co.*, 985 F.2d 1419, 1427 (10 th Cir. 1993)).  Such a categorical motive/conduct dichotomy is not involved here, however, as a defendant's bad-faith violation of the employer's interests merely excepts a tortious interference claim from the threshold legal defense that an agent cannot interfere with his own principal's contracts, *see Martin*, 975 P.2d at 896-97; it does not relieve the plaintiff from proving the established elements of the tortious interference claim he is then allowed to assert. [2]  And, as we have seen, those elements bring the CBA, and thus LMRA preemption, into play.

Plaintiff's implied-contract claim is based on Dyncorp's business-ethics standards, which forbid "[h]arassment of any nature."  App. at 228.  He alleged

---

[2]      We note that plaintiff raises this point in purely academic terms, as there is no suggestion in his allegations that the individual defendants acted on personal motives against Dyncorp's interests; on the contrary, the thrust of his complaint is that they were effectuating Dyncorp's anti-union designs.

that defendants' actions constituted proscribed harassment and that by allowing such conduct Dyncorp breached a duty it assumed–separate from the CBA–by issuing the cited standards. *See id.* at 14-15. This breach, he contends, enables him to invoke the principle that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement." *Garley*, 236 F.3d at 1210 (quotation omitted). The district court disagreed, holding that despite its separate origin, the implied-contract claim was "'inextricably intertwined with consideration of the terms of the [CBA],'" and, thus, preempted by the LMRA. App. at 267 (quoting *Garley*, 236 F.3d at 1211, which held implied-contract claim based on personnel policy preempted under LMRA) (further quotation omitted).

Plaintiff insists his case is distinguishable from *Garley* because there are no indications here "that the [standards] he cites were intended to be read in harmony with the CBA." *Garley*, 236 F.3d 1210-11 (relying on inclusion of references to unionized employees in pertinent documents to hold implied contract inextricably intertwined with CBA). It is difficult to say in the abstract whether Dyncorp's standards were intended to be read in conjunction with the CBA, but we need not resolve that question to decide the preemption issue in this case. Even if there is no general intrinsic connection between the CBA and the standards, consideration

of the CBA would still be necessary to assess the merit of plaintiff's allegations regarding breach of the implied contract for two particularized and interrelated reasons. Because the prohibition on "harassment" set out in the standards is devoid of descriptive content, [3] and the actions plaintiff complains of are not on their face so inherently or plainly wrongful as to make application of such a label ineluctable, there would be no way of telling whether the standards were violated here without consulting the CBA to assess the opposing rights and privileges of the parties. Thus, the CBA would be indispensable to a proper resolution of the implied-contract claim, which is, therefore, preempted under the LMRA.

Finally, plaintiff's pleadings include numerous references to retaliation for his union activities. Because the crux of a retaliation claim is the wrongful intent behind the defendants' conduct independent of the permissibility of that conduct under the CBA, such a claim may escape LMRA preemption, even if it overlaps factually with matters covered by the CBA. *See Garley*, 236 F.3d at 1208-09,

---

[3] Aside from a general anti-discrimination provision prohibiting "disparaging comments or criticisms on the basis o[f] race, color, creed, sex, national origin, age, handicap or veteran's status" (none of which protected classes are implicated by plaintiff's claims), the only language fleshing out what constitutes proscribed harassment refers to "conduct that interferes with work related responsibility and legal requirements for the protection of all employees." App. at 228. Rather than establishing a stand alone criterion for proscribed conduct, this reference to work responsibilities underlines the need to look to the CBA for clarification of what relevant duties, rights, and privileges might be operative in the particular contexts involved in plaintiff's allegations.

1213 (following *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)). Strictly speaking, plaintiff formally pled retaliation only as one aspect of his now-abandoned CBA breach claim, *see* App. at 13-15, but it was a prominent theme throughout his initial factual allegations. Unfortunately, plaintiff's failure to set out a distinct legal claim for retaliation undoubtedly led the district court to focus its attention elsewhere, with the result that its order does not address the unique status of retaliation claims in relation to LMRA preemption recognized in such cases as *Garley* and *Lingle*. This omission does not control our disposition of the appeal, however. This court has often noted that "'we are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'" *United States v. Taylor*, 97 F.3d 1360, 1364 (10th Cir. 1996) (quoting *Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir. 1988) (further quotation omitted)). Defendants have argued repeatedly that plaintiff's allegations of retaliation for union activities fall within the preemptive scope of the NLRA under the long-standing doctrine of *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). *See* App. at 20 (answer), 24-27 (motion and brief for judgment on the pleadings), and 263 (reply brief in support of motion); *see also* Appellee's Brief at 22-25, 28-29. This preemption defense has, tellingly, met with only silence from plaintiff.

Under the *Garmon* doctrine, the National Labor Relations Board (NLRB) has exclusive jurisdiction over unfair labor practices prohibited by the NLRA. Indeed, given the importance of ensuring a consistent national labor policy, the NLRB's authority "pre-empts state and federal court jurisdiction to remedy conduct that is *arguably* protected or prohibited by the Act." *Tamburello v. Comm-Tract Corp.*, 67 F.3d 973, 976 (1 st Cir. 1995) (explaining *Garmon* and quoting *Amalgamated Ass'n of Street, Elec. Ry & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 276 (1971)) (emphasis added); *see also United Ass'n of Journeymen & Apprentices v. Bechtel Power Corp.*, 834 F.2d 884, 886-87 (10 th Cir. 1987). As in *Tamburello*, "[t]he ultimate question presented by [plaintiff's] claims [of retaliation] is whether his supervisors at [Dyncorp] intimidated, coerced, threatened, and harassed him into [losing] his job in retaliation for his union activities." *Tamburell* o, 67 F.3d at 977. "It is beyond dispute that these allegations, if found to be true, would constitute a violation of the NLRA." *Id.* There are limited exceptions to the *Garmon* doctrine, *see id.* at 977-78, but, despite repeated opportunities to do so, plaintiff has never argued that any apply here, and none press themselves upon us of their own weight. Accordingly, to the extent plaintiff's pleadings assert a claim for anti-union retaliation, we hold the claim barred by *Garmon* preemption and, hence, properly dismissed for lack of jurisdiction.

The judgment of the United States District Court for the Western District of

Oklahoma is AFFIRMED.


                                    Entered for the Court


                                    John C. Porfilio
                                    Circuit Judge