UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JANICE STEINBACH,

        Plaintiff-Appellant,

v.

DILLON COMPANIES, INC.,
a Kansas corporation, doing
business as King Soopers;
LYNDA PRICKETT, individually,

        Defendants-Appellees.

No. 99-1557

---

ORDER ON PETITION FOR REHEARING
Filed May 30, 2001

---

Before **BRISCOE** , **McKAY** , and **BALDOCK** , Circuit Judges.

---

This matter is before the court on appellant's petition for panel rehearing of our decision filed March 8, 2001. The petition for rehearing is granted. The court's opinion is withdrawn and the judgment is vacated. A revised opinion is attached to this order.

Entered for the Court
Patrick Fisher, Clerk of Court

By:

    Keith Nelson
    Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 30 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JANICE STEINBACH,

      Plaintiff-Appellant,

v.

DILLON COMPANIES, INC.,
a Kansas corporation, doing
business as King Soopers;
LYNDA PRICKETT, individually,

      Defendants-Appellees.

No. 99-1557

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 99-M-1879)**

---

Submitted on the briefs:

Hugh S. Pixler of Gregson & Pixler, P.C., Denver, Colorado, for
Plaintiff-Appellant.

Emily Keimig and William A. Wright of Sherman & Howard L.L.C.,
Denver, Colorado, and Raymond M. Deeny of Sherman & Howard L.L.C.,
Colorado Springs, Colorado, for Defendants-Appellees.

---

Before **BRISCOE** , **McKAY** , and **BALDOCK** , Circuit Judges.

---

**BRISCOE** , Circuit Judge.

Plaintiff Janice Steinbach appeals the district court's dismissal of her state tort claims of tortious interference with contract and intentional infliction of emotional distress (outrageous conduct), as preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. She also argues that because the district court held the claims preempted, it lacked jurisdiction to find that she failed to state a claim for outrageous conduct. We affirm. [1]

Plaintiff is a former employee of King Soopers and member of the United Food and Commercial Workers, Local No. 7. She alleges that while she was on a properly scheduled vacation, the store manager, threatening termination, made her return to work early and then initiated disciplinary proceedings for her allegedly unexcused absences, knowing that plaintiff had a history of mental instability. Plaintiff alleges that these acts were the result of personal hostility, that the store manager intended to cause her emotional harm, and that the events caused plaintiff to attempt suicide and to experience panic attacks. She also claims that the store manager took these actions to interfere with her contract with King Soopers. The district court held the claims preempted by § 301 because they

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

necessarily required consideration of the parties' collective bargaining agreement.

We review the district court's preemption rulings de novo. Fry v. Airline Pilots Ass'n, Int'l , 88 F.3d 831, 835 (10th Cir. 1996). The ruling that plaintiff failed to state a claim for outrageous conduct is also reviewed de novo. Proctor & Gamble Co. v. Haugen , 222 F.3d 1262, 1278 (10th Cir. 2000) (reviewing de novo dismissal of state tort claims for failure to state a claim).

A state tort claim is preempted by § 301 if its resolution "depends upon the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc , 486 U.S. 399, 405-06 (1988). In Lingle , the Supreme Court held that a retaliatory discharge claim was not preempted because it involved purely factual questions whether the plaintiff was discharged and whether the employer's motivation was to deter or interfere with the employee's exercise of worker's compensation rights. Id. at 407. As the claim could be resolved without reference to the collective bargaining agreement, it was not preempted.

Plaintiff argues that under Lingle neither of her tort claims are preempted . We first consider her tortious interference with contract claim. Plaintiff seems to argue that she had two employment contracts with King Soopers: the collective bargaining agreement, and an at-will agreement that she would work and her employer would pay her until one of them terminated the relationship. See Appellant's Br. at 22. She argues that because it was this at-will contract with

which the store manager interfered, there is no need to refer to the collective bargaining agreement and thus her claim is not preempted.    Plaintiff has not shown that the parties intended to enter into an agreement separate from the collective bargaining agreement, however.  Indeed, the creation of such an outside employment contract is contrary to the concept of collective bargaining, which is intended to forge an exclusive contract controlling all aspects of the employer-employee relationship.    See J.I. Case Co. v. NLRB   , 321 U.S. 332, 338 (1944) ("The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group."). As the collective bargaining agreement creates and controls the employment relationship between King Soopers and plaintiff in this case, it is the only contract upon which her interference claim can be based.

Plaintiff seems to allege two types of tortious interference with contract, interference with King Soopers' performance, as described in the Restatement (Second) of Torts, § 766 (1979), and interference with plaintiff's own performance, as described in § 766A of the Restatement.  Colorado has recognized both forms of this tort.    See  Westfield Dev't Co. v. Rifle Inv. Assoc.     , 786 P.2d 1112, 1117 (Colo. 1990).

To show tortious interference under § 766, plaintiff must prove that a

contract existed between her and King Soopers, that the store manager knew of the contract, that the manager intentionally and improperly caused King Soopers not to perform the contract, and that damage resulted. Trimble v. City & County of Denver, 697 P.2d 716, 726 (Colo. 1985). Whether King Soopers failed to perform the contract requires consideration of the collective bargaining agreement. See Fry, 88 F.3d at 839 (holding interference claim preempted because it required resort to the collective bargaining agreement to determine whether it was breached).

An interference claim under § 766A, on the other hand, requires only that plaintiff show that a third party "intentionally" and "improperly" interfered with plaintiff's own performance of her contract. The Restatement explains that the term "improperly" is used to describe "the balancing process expressed by the terms 'culpable and not justified.'" Restatement (Second) of Torts, Introductory Note to Ch. 37 (1979). Whether a person acted "improperly" requires a balancing of the parties' conflicting interests to determine whether the interference was warranted under the particular circumstances, considering the factors set out in Restatement § 767:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor

and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference, and
(g) the relations between the parties.

Trimble, 697 P.2d at 726.

When it is a corporate agent who has interfered with a contract between the corporation and the plaintiff, such interference is generally privileged if the agent acted for a bona fide organizational purpose. Q.E.R., Inc. v. Hickerson, 880 F.2d 1178, 1184 (10th Cir. 1989); Zappa v. Seiver, 706 P.2d 440, 442 (Colo. Ct. App. 1985); see Zelinger v. Uvalde Rock Asphalt Co., 316 F.2d 47, 52 (10th Cir. 1963) ("[T]he rule [is] that any interference with a corporation's contract by an officer, director or employee of the corporation who is in good faith serving the corporate interests is privileged."). This privilege is not absolute, but must be weighed in balance with the factors listed above. In this case, whether the store manager was justified in calling plaintiff back to work and instituting disciplinary proceedings still requires evaluation the manager's authority under the collective bargaining agreement, and therefore the issue is preempted under §301 of the LMRA. The district court was correct, therefore, in finding plaintiff's tortious interference claim preempted.

Similarly, plaintiff's outrageous conduct claim cannot be determined without reference to the collective bargaining agreement. We have considered outrageous conduct claims against employers on several occasions. In Johnson v.

-6-

Beatrice Foods Co. , 921 F.2d 1015 (10th Cir. 1990), an employee alleged that out of personal hostility, his supervisor instituted a campaign of intentional discrimination and harassment to cause him emotional distress, including verbal abuse, institution of discipline that the supervisor knew was unwarranted, and changes to the employee's working conditions. We held the employee's claim was preempted by § 301 because the outrageousness of his supervisor's conduct could not be evaluated without resort to the collective bargaining agreement, and because the state tort did not create an independent method of measuring when an employer's work-related conduct is outrageous. Id. at 1020-21.

In Albertson's, Inc. v. Carrigan , 982 F.2d 1478 (10th Cir. 1993), we held that an employee's outrageous conduct claim was not preempted by § 301. The employee alleged that defendants conspired with her employer to falsely accuse her of shoplifting, to have her arrested, and to suspend her from employment. We held that the outrageous conduct claim was not preempted because the employee could prove her claim by "show[ing] defendants conspired to have [her] arrested by fabricating her theft . . . from her employer," without referring to the collective bargaining agreement. Id. at 1482.

In our most recent case, Garley v. Sandia Corp. , No. 99-2255, 2001 WL 8308 (10th Cir. Jan. 3, 2001), we addressed a situation similar to plaintiff's. Garley alleged that his supervisor, out of personal hostility, conspired with others

to falsely accuse him of timecard fraud. He alleged that his supervisor, knowing that he was authorized to attend to union business during work hours, initiated an investigation into his alleged timecard fraud, had the employee followed, and caused his discharge. We held that the employee's outrageous conduct claim, as it related to these allegations, was preempted because "[d]etermining whether [the employer's] conduct during its investigation . . . was 'outrageous,' . . . requires construction of [the employer's] rights and obligations under the [collective bargaining agreement] as that is the reference point against which [the employer's] action must be scrutinized." Id. at *13.

Plaintiff argues that her situation is analogous to that of the plaintiff in Albertson's . She argues that because the store manager allegedly fabricated the unexcused absence charge to create a reason to discipline plaintiff, knowing that such acts would cause plaintiff emotional distress, there is no need to look at the collective bargaining agreement. We disagree.

Plaintiff's allegation that her manager fabricated the unexcused absence charge is simply an allegation that the charge was unwarranted. Her complaint alleges that the store manager "abused [her] authority" by requiring plaintiff to come to work during her scheduled vacation and by bringing an unwarranted unexcused absence charge. Appellant's App. at 5. To determine whether the manager abused her authority over plaintiff we must examine the manager's

authority to cancel plaintiff's remaining vacation and require her to return to work, and the propriety of her initiating disciplinary proceedings. These are subjects covered by the collective bargaining agreement, and are subjects ordinarily addressed in a grievance procedure. See Article 10 of Collective Bargaining Agreement, Appellant's App. at 58-62 (covering rights of management and employees regarding scheduling, including vacations) and Article 43, id. at 83-84 (covering use of grievance process for resolving disputes, including scheduling disputes).

Because we cannot determine whether the store manager's conduct was outrageous without examining her authority, this claim is different from the situation in Albertson's , where the fabrication of shoplifting charges and arrest of an employee, alone, would be outrageous. Instead, applying the rationale of Garley and Johnson , we hold the district court was correct in finding plaintiff's outrageous conduct claim preempted. See Garley , 2001 WL 8308, at *12 & *13 (holding that employee's civil conspiracy claim based on fabricated charge of timecard fraud was not preempted, but outrageous conduct claim based on same allegations was preempted because determining whether the supervisor's conduct was outrageous required resort to the collective bargaining agreement).

Our conclusion is buttressed by the Supreme Court's language in Allis-Chalmers Corp. v. Lueck , 471 U.S. 202 (1985), in which the Court held

that a suit for bad faith handling of a disability claim was inextricably intertwined with the collective bargaining agreement and was therefore preempted. Discussing the danger of allowing state tort law to circumvent § 301, the Court stated:

> Claims involving vacation or overtime pay, work assignment, unfair discharge–in short, the whole range of disputes traditionally resolved through arbitration–could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness . . . as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

Id. at 219-20.

Finally, plaintiff argues that resort to the collective bargaining agreement is unnecessary because the rule she was alleged to have broken was not contained in the agreement, but in a separate set of policies developed by King Soopers. It is the collective bargaining agreement that authorized the employer to develop these policies, however, and it is the agreement which defines the scope of the employer's authority. See Garley, 2001 WL 8308, at *10 (rejecting argument that claim was based on policies and rights separate from the collective bargaining agreement, holding that employer's Personnel Policy, Code of Ethics, and Director's Memo were "inextricably intertwined with consideration of the terms of the labor contract") (quotation omitted); Harris v. Alumax Mill Prods., Inc.,

-10-

897 F.2d 400, 403 (9th Cir. 1990) (rejecting similar argument and holding claim preempted because "the determination of both the scope of [the employer's] control over the attendance policy and any consequences flowing from a violation of that policy are dependent upon an analysis of the Agreement"). The district court was correct, therefore, in holding plaintiff's outrageous conduct claim preempted. We need not consider the district court's ruling on the merits of the claim.

AFFIRMED.