**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 18, 2005**

**PATRICK FISHER**
Clerk

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

STANLEY C. MOWRY,

      Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE,

      Defendant-Appellee.

No. 04-1092

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 03-M-2307)**

---

Stefan Kazmierski of Roseman & Kazmierski, L.L.C., Denver, Colorado, for
Plaintiff-Appellant.

Judith A. Biggs (Elizabeth A. Phelan and Jose A. Ramirez, of Holland & Hart
LLP, Denver, Colorado, with her on the brief), of Holland & Hart LLP, Boulder,
Colorado, for Defendant-Appellee.

---

Before **SEYMOUR**, **ANDERSON** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Stanley C. Mowry brought this action against his former employer, United Parcel Service, Inc. (UPS), in Colorado state court alleging (1) unlawful termination in violation of public policy; (2) shorted wages; (3) retaliatory discharge; and (4) intentional infliction of emotional distress. UPS removed the case to federal district court on the basis of diversity jurisdiction. 28 U.S.C. § 1446. It then filed a motion to dismiss all claims on the basis that they were preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). The district court entered an order of dismissal, and judgment in accordance with that order, concluding that Mr. Mowry's state law causes of action were preempted. On appeal, Mr. Mowry maintains his state law claims are independent of any collective bargaining agreement and, thus, are not subject to § 301 preemption. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

I

Mr. Mowry was employed by UPS as a full-time "feeder driver" for approximately six years. He drove a tractor-trailer unit delivering packages between UPS's hub located in Colorado and certain other package centers. Throughout his employment with UPS, Mr. Mowry was a member of the

International Brotherhood of Teamsters (Teamsters). The terms and conditions of Mr. Mowry's employment were governed by a collective bargaining agreement (CBA) negotiated between UPS and the Teamsters called the National Master United Parcel Service Agreement (National Agreement), as well as a regional CBA titled the Central Region United Parcel Service Supplemental Agreement (Supplement).

On April 26-27, 2002, Mr. Mowry drove his regular truck route from Denver, Colorado, to Rawlins, Wyoming, and back. He was pulling a set of loaded Rocky Mountain doubles with a forty foot trailer on the front and a twenty-eight foot trailer on the rear. On the return trip from Rawlins to Denver, Mr. Mowry encountered inclement weather and hazardous road conditions. Subsequent to maneuvering around a jack-knifed tractor trailer stretched across Interstate 80, he pulled into a rest stop to wait for road conditions to improve. After remaining at the rest stop for approximately three hours, Mr. Mowry continued on his return route to Denver. Upon arrival in Denver, he submitted his time card totaling 13.32 compensatory hours for the trip.

Two UPS supervisors had followed Mr. Mowry while he drove the return route from Rawlins to Denver. Based on their observations, the supervisors concluded he had falsified his time card by seeking payment for two hours and forty-seven minutes of breaks he took but failed to record. Due to this

discrepancy in reporting, UPS terminated Mr. Mowry for dishonesty on April 29, 2002. In response, Mr. Mowry filed a grievance with the Teamsters, contending he was discharged for exercising his right to pull off the road during unsafe driving conditions. He sought reinstatement and back pay.

Pursuant to Article 5 of the CBA, Mr. Mowry's matter was referred to the Joint Area Committee (JAC), a board composed of equal numbers of UPS management personnel and Teamsters. Invoking Article 18 of the CBA and the federal regulation it incorporates, 49 C.F.R. § 392.14,[1] Mr. Mowry argued as a defense to his discharge that he had reasonably apprehended "the road conditions were such that to continue would have caused serious injury to himself or the public." Aplt. App. at 42. At the conclusion of an evidentiary hearing, a majority of the JAC ruled in favor of UPS and upheld Mr. Mowry's termination. *Id*. at 93.

---

[1]Title 49 of the Code of Federal Regulations, Section 392.14 reads:

> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured.

49 C.F.R. § 392.14.

Subsequent to the JAC's final decision, Mr. Mowry filed suit against UPS in state court, pleading four causes of action under Colorado law. First, he alleged he "was discharged for exercising his statutory rights and responsibilities." Aple. Supp. App. at 8. Second, he claimed UPS had shorted his checks and refused to address his complaints about them "in retaliation for seeking to enforce his statutory rights to compensation for work performed." *Id*. Third, he maintained he was discharged "in retaliation for seeking to enforce his statutory rights." *Id*. at 9. Finally, he asserted the termination of his employment constituted intentional infliction of emotional distress. *Id*. UPS removed the suit to federal court and filed a FED. R. CIV. P. 12(b)(6) motion. The district court dismissed all of Mr. Mowry's claims on the ground that they were preempted by § 301 of the LMRA.

II

We review the district court's grant of a motion to dismiss *de novo*. *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1206 (10th Cir. 1999). We will uphold dismissal "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256 (10th Cir. 2003). We must accept all well-pleaded allegations in the complaint as true and construe them in the light

most favorable to the plaintiff. *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1487 n.9 (10th Cir. 1996); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). "Whether state law is preempted by federal law is a conclusion of law which we also review *de novo*." *Garley v. Sandia Corp.*, 236 F.3d 1200, 1206 (10th Cir. 2001).

Preemption involves competing state and federal interests. Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that § 301 authorizes federal courts "to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). As a result, "[a] state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Id*. at 210.

The Court has made it clear, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Id*. at 211. Indeed, preemption arises only when an "evaluation of the tort claim

is *inextricably intertwined* with consideration of the terms of the labor contract." *Id*. at 213 (emphasis added). "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988). Consequently, we must evaluate each of Mr. Mowry's claims to determine whether they are "inextricably intertwined" with existing provisions of his CBA and, as a result, preempted by § 301 of the LMRA.

### (A) Claim for Retaliatory Discharge in Violation of Public Policy[2]

Mr. Mowry's claim for retaliatory discharge in violation of public policy is based on his allegation that he was terminated for refusing to drive when weather and road conditions posed a risk of serious injury in violation of 49 C.F.R. § 392.14, 4 C.C.R. § 723-15, and 49 U.S.C. § 31105(a)(2). Each of these statutory and regulatory provisions are related and confer similar rights. Section 392.14 of

---

[2]Mr. Mowry called his first claim "public policy discharge" and his third claim "retaliatory discharge." These two claims are actually one and the same, that is, a claim for discharge in retaliation for refusing to violate state law or for exercising a right protected under state law. Accordingly, we will refer to these two claims collectively as Mr. Mowry's claim for retaliatory discharge in violation of the public policy exception to the doctrine of employment at will. *See, e.g., Crawford Rehab. Servs. v. Weissman*, 938 P.2d 540, 551 (Colo. 1997) (describing claim as "claim for wrongful discharge in violation of public policy"); *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108-09 (Colo. 1992) (common law doctrine of employment at will is subject to "public policy exception" that employment cannot be terminated in violation of state law).

the Federal Motor Carrier Safety Regulations demands that commercial drivers discontinue operation of their motor vehicles in sufficiently dangerous conditions. 49 C.F.R. § 392.14 ("If [weather] conditions become sufficiently dangerous, the operation of the commercial vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated."). Colorado has incorporated § 392.14 by reference, *see* 4 COLO. CODE REGS. § 723-15 (Rule 2.1), and may impose a civil penalty for its intentional violation, *see id.* (Rule 12.5). In addition, the Surface Transportation Assistance Act (STAA), 23 U.S.C. § 101 *et seq.*, which is the statutory authority for § 392.14, prohibits an employer from discharging or taking other disciplinary action against an employee who refuses to operate a commercial vehicle because "the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's unsafe condition." 49 U.S.C. § 31105(a)(1)(B)(ii).

Mr. Mowry submits that, based on these statutory and regulatory provisions, his retaliatory discharge claim is subject to evaluation independent of any interpretation of the CBA and, as a result, is not preempted by § 301. UPS counters that Mr. Mowry's public policy claim is preempted for two reasons. First, because each of the statutory and regulatory provisions on which Mr. Mowry relies are expressly incorporated into the CBA, resolution of his retaliation claim necessarily will involve an interpretation of the labor agreement.

Second, because each element of the retaliation claim requires or is substantially dependent on interpretation of the CBA, the claim and the agreement are inextricably intertwined. We address each of these arguments in turn.

First, we are not persuaded by UPS's assertion that resolution of Mr. Mowry's retaliatory discharge claim involves interpretation of the CBA simply because Article 18 of the CBA expressly incorporates the statutory provisions upon which Mr. Mowry relies. In pertinent part, Article 18 states:

> It shall not be . . . cause for disciplinary action, where employees refuse to operate . . . a vehicle . . . because of the employee's reasonable apprehension of serious injury to himself/herself or the public due to the unsafe conditions as set out in any state or federal rules [and] regulations, . . . applicable to commercial motor vehicle safety . . . to include Part 392.14 of the Federal Motor Carrier Regulations.

Aplt. App. at 20. As stated above, Colorado has adopted § 392.14 of the Federal Motor Carrier Regulations. 4 COLO. CODE REGS. § 723-15. This incorporation by reference of state law in the CBA does not make the determination of Mr. Mowry's retaliatory discharge cause of action in any way dependent on interpretations of the labor contract. To the contrary, it actually makes the CBA dependent on interpretations of federal and state safety regulations. Simply stated, in order to determine whether an adverse employment action due to failure to operate a motor vehicle (where such operation conflicts with state or federal safety laws) violates the CBA, the decision-maker first has to interpret or define

the scope of state and federal safety laws. There is no reason whatsoever to first look to the CBA in order to establish whether or not an employee's safety-related behavior comports with state or federal safety statutes or regulations.

It is also worth noting that Mr. Mowry's retaliation claim is based on important state regulations "that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers*, 471 U.S. at 212. Colorado has a substantial interest in motorist safety and that legitimate interest does not interfere with the federal labor regulatory scheme.[3] *Peabody Galion v. A.V. Dollar*, 666 F.2d 1309, 1316-19 (10th Cir. 1981) (holding Oklahoma statute not preempted by federal labor law since it had no tendency to conflict with National Labor Relations Act or any federal labor law). Indeed, discharging workers because they were following state safety laws has nothing to do with union organizing or collective bargaining. *Id.* at 1316 ("discharging workers because they have filed [worker's compensation] claims has nothing to do with collective bargaining"). For the aforementioned reasons, we conclude that Mr. Mowry's state law retaliation claim is not preempted simply because the safety

---

[3]We note that UPS's argument, which would place the safety of motor vehicle operating Coloradans at the mercy of three UPS employees selected for an arbitration panel, is inconsistent with controlling Supreme Court precedent. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) ("even if an arbitrator should conclude that the [CBA] does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law").

regulations upon which his claim is based are incorporated in the CBA.

Second, we disagree with UPS's argument that Mr. Mowry's retaliatory discharge claim is "inextricably intertwined" with the CBA because each element of the claim requires or is substantially dependent on interpretation of the agreement. The issue of preemption of retaliatory discharge cases is controlled by *Lingle v. Norge Div. of Magic Chef, Inc.* In *Lingle*, an employee brought a retaliatory discharge claim after his employer, who accused him of filing a false worker's compensation claim, fired him pursuant to a "just cause" provision of the collective bargaining agreement. 486 U.S. at 401. The Court held that application of the state tort remedy was not preempted by § 301 of the LMRA. *Id.* In reaching that conclusion, the Court first evaluated the elements of the state tort action and noted that

> to show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging . . . him was to deter him from exercising his rights . . . or to interfere with his exercise of those rights.

*Id.* at 407 (quotation omitted). Mr. Mowry must prove two of these three elements to succeed on a retaliatory discharge claim under Colorado law. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992) (enumerating three elements plaintiff must prove to make prima facie case of retaliatory discharge); *see also Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1427

-11-

(10th Cir. 1993) (refusing to preempt Colorado retaliatory discharge claim because gravamen of such action is employer's actual or primary motive in firing employee). The Court in *Lingle* explained that

> [e]ach of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

486 U.S. at 407 (citations omitted).

Simply stated, it is not necessary to look to collective bargaining agreements in order to decide retaliatory discharge claims. In fact, the Court held in *Lingle* that a retaliatory discharge claim is not preempted by § 301 even if the resolution of that claim requires the same factual inquiry as the CBA grievance procedure for unjust discharge.

> We agree with the [lower] court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the plaintiff] was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis . . . . [Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when

-12-

adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 409-410 (footnotes omitted). Recognizing that litigating a state law retaliatory discharge claim presents purely factual questions pertaining to the "conduct of the employee and the conduct and motivation of the employer," and that neither requires "a court to interpret any term of a collective-bargaining agreement," *id.* at 407, *Lingle* makes clear that Mr. Mowry's retaliation claim does not lend itself to the doctrine of preemption.

The Supreme Court adopted the *Lingle* standard in holding that the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, does not preempt a claim for retaliatory discharge in violation of public policy on facts remarkably similar to the instant case. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263 (1994). In *Hawaiian Airlines*, Grant Norris was terminated for insubordination from his job as an aircraft mechanic after refusing to sign a maintenance record to certify that a repair had been performed satisfactorily and that the airplane was fit to fly as required under his CBA. *Id.* at 249-50. Throughout the grievance procedure, Mr. Norris, relying on provisions in the CBA, argued that an employee may not be fired without just cause and may not be disciplined for refusing to perform work

that is in violation of health and safety laws.  Mr. Norris ultimately filed a complaint in Hawaii state court alleging, *inter alia*, discharge in violation of public policy.  After deciding to apply the *Lingle* framework to the RLA, the Court stated that

> the question under *Lingle* is whether [the employee's] state-law wrongful-discharge claims are independent of the CBA. [The employer] argue[s] that resort to the CBA is necessary to determine whether [the employee], in fact, was discharged. This argument is foreclosed by *Lingle* itself.  *Lingle* teaches that the issue to be decided in this action – whether the employer's actions make out the element of discharge under Hawaii law – is a purely factual question.
>
> Nor are we persuaded by [the employer's] contention that the state tort claims require a determination whether the discharge, if any, was justified by [the employer's] failure to sign the maintenance record, as the CBA required him to do.  Although such a determination would be required with regard to respondent's separate allegation of discharge in violation of the CBA, the District Court dismissed that count as pre-empted by the RLA, and respondent does not challenge that dismissal.  The state tort claims, by contrast, require only the purely factual inquiry into any retaliatory motive of the employer.

*Id*. at 266.  As *Hawaiian Airlines* teaches, whether UPS's termination of Mr. Mowry was justified because he failed to record his time in compliance with the CBA is not relevant to the determination of his state retaliatory discharge claim, which requires only a factual inquiry into any retaliatory motive of UPS.

Following the logic of *Lingle* and *Hawaiian Airlines*, this court has emphasized that when evaluating whether a retaliation claim is preempted, "we must draw an important distinction between [the employer's] contractual rights to

take the actions it did and the *motivations* behind them." *Garley*, 236 F.3d at 1213. "So long as the state law cause of action is concerned not with the employer's contractual right to discharge the employee, but rather with its motives in exercising that right, the CBA is not relevant and preemption does not apply." *Jarvis*, 985 F.2d at 1427 (holding a retaliatory discharge claim not preempted by § 301). Indeed, "[e]ven if the employee violated the employer's rules, giving the employer 'just cause' to discharge him, the question is whether the employer's motivation for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law." *Davies v. Am. Airlines, Inc.*, 971 F.2d 463, 466 (10th Cir. 1992) (citing *Marshall v. TRW, Inc., Reda Pump Div.*, 900 F.2d 1517, 1521 (10th Cir. 1990)). The case law makes clear the focus of the preemption analysis is whether the state law claim requires interpretation of a collective-bargaining agreement. *Hawaiian Airlines*, 512 U.S. at 258 (so long as "the CBA is not the 'only source' of [the employee's] right not to be discharged wrongfully," the state law claim is not preempted). The gravamen of a retaliatory discharge claim is the employer's actual or primary motive in taking the adverse employment action, irrespective of any "just cause" it may have had under the CBA. *Davies*, 971 F.2d at 466.

There is no question here that whether continuing to drive in particular conditions risks the public safety and whether UPS fired Mr. Mowry for violating

company rules or for exercising his right to pull over are pure factual determinations not "inextricably intertwined" with the CBA. *See Karnes v. Boeing Co.*, 335 F.3d 1189, 1193 (10th Cir. 2003) ("whether Boeing has 'uniformly applied' its anti-drug policy is a purely factual inquiry and is not 'inextricably intertwined' with the terms of the CBA"). There is no need for a court to look at the CBA for evidence of either the road conditions on the date in question or the employer's state of mind at the time of the adverse employment action. *Id.* ("Neither inquiry requires a court to interpret, or even refer to, the terms of a CBA."). As we have explained,

> [t]he tort of retaliatory discharge [under Colorado law] evolved as an exception to the historic right of employers to terminate employees at will. The purpose of these actions was to override the contractual rights of the employer, whatever they may be, when the employer's motive in exercising those rights "contravenes a clear mandate of public policy." Thus, in a retaliatory discharge suit under Colorado law, the employer's contractual rights are not relevant, because any such rights give way to the employee's statutory right to be free from retaliation.

*Jarvis*, 985 F.2d at 1427 (internal citations omitted). We concluded in *Jarvis* that "[p]laintiff's retaliatory discharge claim is therefore not preempted by § 301." *Id.* The same outcome is required in the instant case. Because Mr. Mowry's retaliatory discharge claim in violation of public policy is "'independent' of the [CBA] in the sense of 'independent' that matters for § 301 pre-emption purposes," *Lingle*, 486 U.S. at 407, his claim is not preempted by federal labor

-16-

law.

### (B) Wages and Compensation Claim

Mr. Mowry next complains that UPS shorted his checks and he was discharged in part because he complained to UPS concerning the inadequate compensation. We agree with UPS that this claim is preempted by § 301. In order to resolve the claim, a court would have to determine what work Mr. Mowry performed, when he worked, whether delays occurred and, if so, whether he was entitled to be paid for those delays. The court would also have to determine what wages he should have been paid, what wages he actually was paid, whether he was underpaid, and, if so, the amount of the shortfall. All of these issues are regulated by the CBA and, thus, require consideration of the collective bargaining agreement. Article 17 of the CBA expressly assures full payment for all hours worked and specifically addresses rates of pay, computation of time worked, credit for certain delays that occur through no fault of the employee, and procedures for obtaining full payment of wages. *See* Aplt. App. at 18-19. In sum, because Mr. Mowry's wage and compensation claim is substantially dependent on analysis of the wage and compensation provisions of the collective bargaining agreement, that claim is preempted by federal labor law. *Allis-Chalmers*, 471 U.S. at 220.

### (C) Intentional Infliction of Emotional Distress Claim

Mr. Mowry's final cause of action alleges that UPS's act of terminating him constitutes intentional infliction of emotional distress. Any argument that § 301 does not preempt this claim is foreclosed by circuit precedent. *See, e.g., Steinbach v. Dillon Cos., Inc.*, 253 F.3d 538, 541 (10th Cir. 2001); *Garley*, 236 F.3d at 1214; *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1019-20 (10th Cir. 1990). We have repeatedly held that an employee's outrageous conduct claim is "preempted by § 301 because the outrageousness of his supervisor's conduct could not be evaluated without resort to the collective bargaining agreement, and because the state tort did not create an independent method of measure when an employer's work-related conduct is outrageous." *Steinbach*, 253 F.3d at 541; *see also Beatrice Foods*, 921 F.2d at 1020 ("We hold that [the employee's] claim for intentional infliction of emotional distress closely parallels the bad faith claim in *Allis-Chalmers*, and is thus pre-empted by § 301."). Recently, we held that an employee's civil conspiracy claim based on a fabricated charge of timecard fraud was not preempted but the employee's outrageous conduct claim based on the same factual allegations was, because determining whether the supervisor's conduct was outrageous required resort to the collective bargaining agreement. *Garley*, 253 F.3d at 1213-14. Mr. Mowry's outrageous conduct claim is preempted by § 301 for the very same reason – determining whether UPS's

conduct in terminating Mr. Mowry was "outrageous" requires construction of UPS's rights and obligations under the CBA, "as that is the reference point against which [UPS's] action must be scrutinized." *Id*. at 1214.

For the reasons detailed above, we **AFFIRM** the dismissal of Mr. Mowry's wage and compensation and intentional infliction of emotional distress claims, **REVERSE** the dismissal of his claim for retaliatory discharge in violation of public policy, and **REMAND** for proceedings consistent with this opinion.