**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 7, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THOMAS RAEL,

     Plaintiff - Appellant,

v.

SMITH'S FOOD AND DRUG CENTERS,
INC.; ARTURO SUAZO, individually and
as an employee of Smith's Food and Drug
Centers, Inc.,

     Defendants - Appellees.

No. 16-2278
(D.C. No. 1:15-CV-00983-SCY-KK)
(D. N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **BRISCOE**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.
_____

     Thomas Rael appeals the district court's dismissal of his state law tort claims

as preempted by § 301 of the Labor Management Relations Act ("LMRA"),

29 U.S.C. § 185(a).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

    * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I. Factual Background

Rael worked for Smith's Food and Drug Centers as a meat cutter for 25 years until he resigned in December 2014. The terms of Rael's employment were governed by a collective bargaining agreement ("CBA") negotiated between Smith's and Rael's union. Arturo Suazo became Rael's immediate supervisor approximately a year before he resigned.

In his operative complaint, Rael alleged that he left his position with Smith's because of continual harassment by Suazo. He claimed that Suazo frequently yelled at and "constantly harassed, belittled, and degraded" him. Aplt. App. at 20. More specifically, Suazo repeatedly called Rael "old man," regularly said he "was moving too slow," and told Rael that younger meat cutters could do his job better and get it done faster. *Id.* Rael claimed that, due to a workplace injury, he was unable to work as fast as younger employees or as quickly as Suazo demanded. He alleged that he is 58 years old, while Suazo is "much younger." *Id.*

Rael complained about Suazo's harassment and mistreatment to several assistant store directors and to the local head of human resources for Smith's. These individuals said they would talk to Suazo, but Suazo never modified his conduct. He instead told Rael that he could find another job if he did not like the way Suazo treated him. Rael ultimately resigned due to "constant pressure" from Suazo, feeling that he had been "constructively terminated." *Id.* at 21. Rael alleged that Suazo was acting within the course and scope of his employment at all material times.

2

Rael alleged state law claims for intentional infliction of emotional distress ("IIED") and prima facie tort against both Smith's and Suazo. Defendants moved to dismiss the complaint, arguing that Rael's claims are preempted by § 301 of the LMRA. The district court granted the motion and dismissed Rael's complaint.

## II.    Legal Background

### A.    Rael's State Law Claims

Rael alleged two tort claims under New Mexico law. To prevail on his IIED claim, he was required to show that he suffered severe emotional distress caused by defendants' intentional or reckless conduct that was extreme and outrageous under the circumstances. *See Coates v. Wal-Mart Stores, Inc.*, 976 P.2d 999, 1009 (N.M. 1999). The elements of a prima facie tort claim are: "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; (4) and the absence of sufficient justification for the injurious act." *Lexington Ins. Co. v. Rummel*, 945 P.2d 992, 995 (N.M. 1997). Rael argues that neither of his state law tort claims is preempted by § 301.

### B.    Section 301 Preemption

Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). This provision has been construed "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of

3

labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Section 301 is also deemed to have a preemptive effect, such that "[a] state rule that purports to define the meaning or scope of a term in a contract suit . . . is pre-empted by federal labor law." *Id.* at 210. In *Allis-Chalmers*, the Supreme Court extended this rule beyond breach of contract claims, stating that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.* at 211. Ultimately, the Court held that preemption depends on "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213.

Applying this test, the Supreme Court held in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 401 (1988), that a state law claim alleging a retaliatory discharge for filing a workers' compensation claim was not preempted by § 301. The Court reasoned that the "purely factual questions" necessary to prove the elements of this claim could be determined without interpreting any term of a CBA. *Id.* at 407 (noting the factual issues were whether an employee was discharged or threatened with discharge and whether the employer's motivation was to deter the employee from exercising his workers' compensation rights). Thus, under *Lingle*, "an application of state law is preempted by § 301 . . . only if such application requires the interpretation of a collective-bargaining agreement." *Id.* at 413.

4

## C.    Tenth Circuit Cases Holding IIED Claims Preempted by § 301

After *Lingle*, we have regularly held that IIED claims are preempted by § 301. In *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1016 (10th Cir. 1990), the plaintiff alleged that he left his job as a delivery driver due to harassment by his supervisor. We held that his IIED claim was preempted because "[e]ach of [his] allegations directly relates to either explicit or implied rights derived from the CBA, just as the bad faith tort claim in *Allis-Chalmers* did." *Id.* at 1020. Further, because an IIED claim under Oklahoma law "should not be considered in a sterile setting, detached from the milieu in which it took place,"[1] we held that "all aspects of [the plaintiff's] employment, including the terms of the CBA, must be considered when evaluating whether [his employer's] conduct was outrageous." *Id.* (internal quotation marks omitted). More specifically, we concluded that "it cannot be determined whether [the employer's] conduct was outrageous without determining whether the conduct was allowed under the CBA. Indeed, actions that the CBA permits might be deemed reasonable in virtue of the fact that the CBA permits them." *Id.* (brackets and internal quotation marks omitted). Finally, we determined that *Lingle* was inapposite because, unlike a state statute that specifically prohibits firing an employee for exercising rights under a workers' compensation act, the state law IIED claim in *Johnson* did not "create an independent method of measuring when an employer's work-related conduct is outrageous." *Id.* at 1021.

---

[1] Rael does not argue that an IIED claim under New Mexico law requires a different analysis.

Our subsequent decisions have largely followed *Johnson* in holding that IIED claims are preempted by § 301. *See Mowry v. United Parcel Serv.*, 415 F.3d 1149, 1158 (10th Cir. 2005) (determination whether alleged conduct was outrageous required construction of employer's rights and obligations under the CBA); *Steinbach v. Dillon Cos.*, 253 F.3d 538, 542 (10th Cir. 2001) (same); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1214 (10th Cir. 2001) (same, as to part of IIED claim); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir. 1992) (same).

**D.    Tenth Circuit Cases Holding IIED Claims Not Preempted by § 301**

We have also held that some IIED claims were *not* preempted by § 301. Although we held that part of the plaintiff's IIED claim was preempted in *Garley*, we concluded that it was not preempted to the extent that the claim was based on the employer's conduct after an arbitrator ordered the plaintiff's reinstatement. 236 F.3d at 1214. We emphasized this portion of the IIED claim was not preempted by § 301 because it was based on allegations regarding the employer's "*retaliatory acts*"; thus, as with the plaintiff's "independent cause of action for retaliation, determining whether [the employer's] acts are 'outrageous' would not require resort to the CBA." *Id.*

In two more cases, we held that IIED claims were not preempted based on the nature of the alleged conduct. In *Albertson's, Inc. v. Carrigan*, 982 F.2d 1478, 1479 (10th Cir. 1993), the plaintiff brought a state law claim for extreme and outrageous conduct, alleging that she was suspended after the defendants conspired to falsely accuse her of shoplifting. Relying on *Lingle*, we held that the plaintiff's state law

6

claim was not preempted by § 301 because "if [she] can show defendants conspired to have [her] arrested by fabricating her theft of groceries from her employer, proving their outrageous conduct need not require interpretation of or reference to the CBA." *Id.* at 1482; *see also id.* at 1483 (citing earlier Supreme Court decision holding that IIED claims were not preempted by another provision of the LMRA where the alleged conduct was "particularly abusive").

We also held that IIED claims were not preempted in *Fry v. Airline Pilots Ass'n, International*, 88 F.3d 831, 841 (10th Cir. 1996).[2] The plaintiffs were airline pilots who continued working when their union went on strike. In support of their IIED claims against the union, the pilots presented evidence that they and their families were targeted with "massive abuse" intended to punish them, drive them from their jobs, and deter other union members from crossing future picket lines. *Id.* at 840. The harassment campaign included "food and drink contamination, property loss and property damage, death threats and threats of physical harm, threats of sexual assault of spouses and family members, and harassing phone calls and knocks on the door during the night on flight layovers, among other acts of harassment and intimidation." *Id.* (internal quotation marks omitted). We held that the pilots' IIED claims were not preempted because it was unnecessary to interpret the CBA to find liability for outrageous conduct on these facts. *Id.* at 841. In reaching this

---

[2] In *Fry*, we considered preemption under the Railway Labor Act rather than § 301 of the LMRA. But this court applies the *Lingle* preemption standard under both statutes. 88 F.3d at 835-36.

7

conclusion, we cited a Seventh Circuit case holding that an IIED claim was not preempted by § 301 where the conduct alleged was "'not even arguably sanctioned by the labor contract.'" *Id.* (quoting *Keehr v. Consol. Freightways of Del., Inc.*, 825 F.2d 133, 138 n.6 (7th Cir. 1987)).

### III. Analysis

We review de novo the district court's dismissal of Rael's complaint for failure to state a claim on which relief can be granted. *See Garley*, 236 F.3d at 1206; *see also id.* at 1203 (reviewing district court's grant of motion to dismiss for failure to state a claim based on § 301 preemption). "Whether state law is preempted by federal law is a conclusion of law which we also review *de novo*." *Id.*

### A. Under the Reasoning in *Johnson*, Rael's State Law Tort Claims are Preempted by § 301

Applying *Johnson* and its progeny, the district court held that Rael's IIED claim is preempted by § 301. It reasoned that, as in *Johnson*, Rael's allegations directly relate to explicit and implied rights derived from the CBA. The court pointed to CBA provisions granting Smith's the sole right and function "to maintain the discipline and efficiency of the employees," Aplt. App. at 47 (CBA § 6.1), and prohibiting "the use of profanity, raised voices and harassment" in the workplace, *id.* at 78 (CBA § 26). The court concluded that "[w]hether Suazo's comments constituted harassment as opposed to an appropriate evaluation of a subordinate's efficiency requires an interpretation of the CBA." *Id.* at 128. It further held that "the allegations in the present case do not rise to the level of the clearly outrageous

8

conduct in *Albertson's* . . . and do not lend themselves to such a clear cut

determination." *Id.* at 130.

The district court held that Rael's prima facie tort claim is also preempted by

§ 301 because "[a]s is the case with determining the 'outrageousness' of conduct in

the [IIED] context, determining whether the conduct was 'justified' cannot be

evaluated without resort to the [CBA]." *Id.* at 132. The court reasoned that his prima

facie tort claim "lacks an independent method of measuring whether the employer's

alleged conduct was justified." *Id.* Rael does not separately challenge the district

court's reasoning in dismissing his prima facie tort claim.[3]

Rael argues that Suazo's conduct could not arguably be sanctioned by the

CBA. *See* Aplt. Opening Br. at 14 (citing *Keehr*, 825 F.2d at 138 n.6). But we agree

with the district court that the facts underlying Rael's state law claims are more akin

to the allegations in *Johnson* than in *Albertson's*. Like Rael, the plaintiff in *Johnson*

alleged that his supervisor yelled at him, verbally abused him, and frequently called

him names in the presence of co-workers. 921 F.2d at 1017. Moreover, *Johnson* also

involved other conduct that is more egregious than any of the treatment alleged by

---

[3] The district court dismissed both of Rael's preempted claims rather than treating them as arising under § 301 because Rael did not demonstrate that he had exhausted his available remedies under the CBA. Rael does not challenge this aspect of the district court's decision.

9

Rael.[4]  Yet we held that it was necessary to construe the applicable CBA to determine whether the supervisor's alleged conduct was outrageous.  *Id.* at 1020.

In reaching our holding in *Johnson*, we acknowledged our sister circuits' varying decisions applying § 301 preemption to IIED claims.  *Id.* at 1021.  But we nonetheless held that *Allis-Chalmers* and *Lingle* necessitated our preemption conclusion.  *Id.* at 1021-22.  *Johnson* is binding precedent in this circuit; if not distinguishable, it controls our result in this case, *see United States v. Edward*, 224 F.3d 1216, 1220 (10th Cir. 2000) ("Under the doctrine of stare decisis, this panel cannot overturn the decision of another panel of this court barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." (internal quotation marks omitted)).

## B.    Rael's Arguments why *Johnson* is distinguishable

Rael advances two arguments why his case is distinguishable from *Johnson*. He first contends that the determining factor for § 301 preemption is whether the employee "suffered emotional distress caused by [his] employer in a matter involving employee discipline, or in a matter involving the disciplinary process."  Aplt. Opening Br. at 6.  If it did, Rael argues that the tort claim is preempted; but if the

---

[4] The delivery-driver plaintiff in *Johnson* alleged that his supervisor, among other things, encouraged one co-worker to shun him and others to follow him around; told a co-worker to ignore theft by other drivers and instead devote his time to getting rid of the plaintiff; publicly ridiculed the plaintiff, falsely claiming he had the most "bad product" on his route; rearranged the plaintiff's route, making it more difficult to run; made it impossible to properly service a particular customer; planted bad product on the plaintiff's route, then disciplined the plaintiff for it; and suspended the plaintiff for leaving bad product with a customer, knowing it was left by a different driver.  921 F.2d at 1017-18.

claim arose "outside of the disciplinary context," *id.* at 7, Rael contends that preemption is not generally applied. He argues that his tort claims are not preempted by § 301 because, unlike the IIED allegations in *Johnson*, Rael's claims are based on conduct by Suazo outside of a disciplinary context. Rael also contends that *Johnson* is distinguishable because, unlike the CBA in *Johnson*, the Smith's CBA lacks a clearly applicable grievance procedure. Neither contention has merit.

### 1. Rael Fails to Show that § 301 Preemption Applies Only to IIED Claims Involving Conduct Related to a Disciplinary Process

Rael maintains that there is a line of cases demonstrating his proposition that § 301 preempts only tort claims based on conduct that occurred within a disciplinary process. But he points to no case expressly holding that preemption turns on this factor. Nor do all of his cases align with his proposition.

*Johnson*, itself, does not support it. Although the conduct alleged in *Johnson* involved workplace harassment both in and outside of a disciplinary context,[5] we held that § 301 preempted all of the plaintiff's IIED allegations, 921 F.2d at 1020. Moreover, we specifically disagreed with the district court to the extent it limited its preemption holding to the plaintiff's allegations related to suspensions or disciplinary

---

[5] The allegedly outrageous conduct in *Johnson* included written warnings, suspensions, and terminations, as well as other actions not allegedly related to any disciplinary action or process. *See* 921 F.2d at 1017-18.

11

actions, stating that "since the CBA also allows 'disputes' to be grieved, we would hold that all of [his] allegations are pre-empted." *Id*. at 1020.[6]

Rael's response is that *Johnson* is an "outlier" case, Aplt. Opening Br. at 10, and he attempts, without success, to assemble a line of other cases clearly supporting his proposition. Rael is correct that, when we have followed *Johnson* in finding IIED claims were preempted by § 301, the cases involved conduct that occurred within a disciplinary context. *See Mowry*, 415 F.3d at 1158 (termination); *Steinbach*, 253 F.3d at 539 (cancellation of employee's vacation on threat of termination and initiation of disciplinary proceedings); *Garley*, 236 F.3d at 1214 (investigation of employee and termination); *Mock*, 971 F.2d at 530 (investigation of employees and termination). But our non-preemption holdings in *Albertson's* and *Garley* do not clearly support Rael's proposition.

In *Albertson's*, the plaintiff alleged that she was suspended from employment based on a false accusation of shoplifting. 982 F.2d at 1479. In holding that her "single state law claim" of extreme and outrageous conduct[7] was not preempted by

---

[6] Contrary to Rael's assertion, *see* Aplt. Opening Br. at 12, we did not dismiss the plaintiff's non-disciplinary allegations in *Johnson* because they were insufficient to sustain an IIED claim. We did hold that the supervisor's alleged statements and actions related to the plaintiff's divorce were arguably not "*work-related*," and we held that *those* allegations were insufficient, on their own, to support an IIED claim. 921 F.2d at 1020 n.3 (emphasis added). But we held that the plaintiff's remaining allegations—involving conduct both within and outside of a disciplinary context— were preempted by § 301. *Id.* at 1020.

[7] The district court had construed the plaintiff's complaint as bringing two claims: one based on her suspension and one based on the conspiracy to charge her with shoplifting. 982 F.2d at 1479.

12

§ 301, we distinguished *Johnson* and other previous decisions in which the outrageousness of the alleged conduct could not be determined without interpreting the CBAs. *Id.* at 1481-82. Thus, we did not hold that the claim avoided § 301 preemption because the allegedly outrageous conduct occurred outside of a disciplinary context. Rather, we acknowledged that her outrageous conduct claim would require a determination of the same factual issues and disputes as her separate challenge to her suspension, which she was pursuing through arbitration under the CBA. *Id.* at 1482.

In *Garley*, we held that part of the plaintiff's IIED claim was not preempted because it was based on the employer's "*retaliatory acts*," not because the conduct occurred outside of a disciplinary process. 236 F.3d at 1214 (citing the court's prior analysis regarding the employee's retaliation claim). Moreover, the allegations underlying the non-preempted IIED claim in *Garley* arguably involved conduct related to a disciplinary process. The employee claimed that his employer retaliated by refusing to provide the relief he was entitled to under an arbitrator's reinstatement ruling that followed his termination. *See* 236 F.3d at 1205, 1214. Two other cases Rael cites similarly found that retaliation-based IIED claims were not preempted by § 301. *See Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1049, 1051-52 (8th Cir. 1998) (holding IIED claim based on harassment in retaliation for employee's complaints about sanitation and selling outdated meat was not preempted by § 301); *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 115 (3d Cir. 1990) (holding IIED claim

13

based on harassment and termination after filing workers' compensation claim was not preempted by § 301).[8]

Finally, Rael mischaracterizes another case. He contends that *Douglas v. American Information Technologies Corp.*, 877 F.2d 565 (7th Cir. 1989), involved only "discipline," Aplt. Opening Br. at 7. The plaintiff did allege "an unjustified final warning" and a threat of termination, but she also alleged forced participation in stressful work, unwarranted scrutiny of her work, and constant harassment. 877 F.2d at 567-68. Yet the court held that her IIED claim was preempted by § 301 because its resolution would require interpretation of the CBA. *Id.* at 572-73.

Rael fails to show there is a line of cases in which § 301-preemption rulings have turned on whether the state law claim arose from conduct within a disciplinary process. Nor has he distinguished *Johnson* as an "outlier" as to any such line of cases. Moreover, it is unsurprising that many of the cases applying § 301 preemption to IIED claims have involved allegations of outrageous conduct that occurred within a disciplinary process, as that subject is often addressed by the terms of a CBA. *See, e.g., Mock*, 971 F.2d at 530 (IIED claim related to manner of employee investigation and termination required interpretation CBA provision permitting termination for "just cause."). But § 301 preemption extends to *any* state law claim that requires

---

[8] Rael acknowledges that *Krashna* involved allegations of harassment not related to discipline (e.g., increasing the amount of the employee's workload, impugning him orally, and taking other acts "to harass and annoy" him), as well as termination of the employee. 895 F.2d at 115 & n.5. But despite the disciplinary-related allegation, the court held that the plaintiff's IIED claim was not preempted by § 301. *Id.* at 115.

interpretation of *any* CBA term.  What "matters for § 301 pre-emption purposes [is whether] resolution of the state-law claim does not require construing the collective-bargaining agreement."  *Lingle*, 486 U.S. at 407.

### 2. Rael Also Fails to Show that the Smith's CBA Lacks a Grievance Procedure Applicable to His Claims

Rael also attempts to distinguish *Johnson* on the basis that the Smith's CBA "does not provide a[] clear and express procedure for [him] to grieve his harassment and bullying."  Aplt. Opening Br. at 18.[9]  We noted in *Johnson* that the plaintiff "could have used the CBA grievance procedure for any of the allegations in his complaint since all the allegations involved either a suspension, discharge, or work-related dispute."  921 F.2d at 1020.  Therefore, because "disputes" were grievable under the CBA, we did not limit our § 301-preemption ruling to the plaintiff's IIED claims related to suspensions and disciplinary actions.  *Id*.

Rael argues that, unlike in *Johnson*, he could not redress his claims under the grievance provisions in the Smith's CBA.  He contends that Suazo's harassment was

---

[9] Although Rael does not explain why grievability of his claim is relevant, the Supreme Court has said that § 301 preemption "preserves the central role of arbitration" in labor disputes.  *Allis-Chalmers*, 471 U.S. at 219; *see also Lingle*, 486 U.S. at 411 n.11 (noting arbitration is called for in most CBAs).  Thus, a preemption rule

> that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

*Allis-Chalmers*, 471 U.S. at 220 (citation omitted).

15

not grievable because the anti-harassment provision in the CBA is merely aspirational and unenforceable and the grievance provision is ambiguous. Rael bases these contentions entirely on the absence of an express statement in the CBA that a violation of the anti-harassment provision is grievable.

But Smith's argues that Rael's allegations *are* grievable under the CBA. Smith's points to the broad language of the grievance provision itself:

> The Union or any employee in the Bargaining Unit who has any dispute or disagreement of any kind or character arising out of or in any way involving the interpretation or application of this Agreement, shall submit such dispute or disagreement for resolution under the procedures and in the manner set forth in this Section.

Aplt. App. at 66 (CBA § 15.1). Rael does not explain why he could not grieve Suazo's alleged harassment under this expansive grievance language (as supplemented by implied contractual rights and "the common law of the shop," *Johnson*, 921 F.2d at 1020). He also notes that "harassment" is not defined in the CBA. But the final step in the CBA's grievance process is arbitration. Aplt. App. at 67 (CBA § 15.2(c)). And under § 301, it is the arbitrator who must interpret the CBA's anti-harassment provision in the first instance. *Allis-Chalmers*, 471 U.S. at 220. Rael again fails to show that his case is distinguishable from *Johnson*.

### C. Rael Also Fails to Establish that his Individual Claims against Suazo are not Preempted by § 301

In his final contention, Rael argues the district court erred in holding that his individual claims against Suazo are preempted. The court based its ruling on *Steinbach*, which affirmed the dismissal of an IIED claim brought against both the

16

plaintiff's former employer and her supervisor because the claim was preempted by § 301. 253 F.3d at 539. Rael asserts that *Steinbach* has not been cited for this proposition, but he fails to point to any decision holding that claims against a supervisor are *not* preempted. Nor did he provide any support for this contention in the district court. *See* Aplt. App. at 132 (district court's dismissal order noting that "Plaintiff cites no authority for this proposition"). We decline to address an argument for which Rael provides no legal authority. *See United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006).

## IV.    Conclusion

The district court's judgment is affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

17